CASE 95—ACTION BY MERCER COUNTY AGAINST THE CITY OF HARRODS-
BURG FOR DAMAGES FOR REMOVING HITCHING RACKS ERECTED BY
THE COUNTY IN SAID CITY.—FEB. 13.

# Mercer County v. City of Harrodsburg.

APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.  AFFIRMED.

CONTRACTS—MUNICIPAL CORPORATIONS—NUISANCE.

Held:   1. Where plaintiff, a county, contracted with defendant city
    that, in consideration of plaintiff's agreement to build a fence
    and a good brick pavement on certain land surrounding defend-
    ant's public square, and its surrender of such land, plaintiff
    should be granted the privilege of erecting hitching racks on
    the same, and be entitled to perpetually maintain the same,
    which it did for seventeen years without interruption, when,
    by reason of the growth of the city, the racks became a nuisance,
    and defendant forcibly removed them, plaintiff was not entitled
    to recover therefor.

W. C. BELL AND GAITHER & VANARSDALL, FOR APPELLANT.

The county surrendered the ground and the title was in the
city from that time, there being sufficient memorandum of the
contract in writing.    At the time of the wrongs complained
of the city had been in possession for seventeen years.    The
city granted the county the easement to erect and maintain
hitching racks on the land thus surrendered.    On May 19,
1900, the city forcibly tore away the racks and would not al-
low the county to rebuild.    The city was in the possession,
and, denying the right, the county could not enjoy the ease-
ment.    The county having no right to forcibly enter and en-
joy the easement, the proper remedy was a suit to recover dam-
ages.

The city induced the county to enter into a contract that was
lawful in all its parts; by reason of the city increasing its pop-
ulation the use of the easement granted becomes a nuisance,
hence, if the city forcibly removes the racks and refuses to al-
low the use of the easement, then it must pay in damages the
value of the lands and improvements. •

### AUTHORITIES CITED.

Mercer County v. City of Harrodsburg 23 R., 1744; Steele v. Curle, 4 Dana, 384; Gray v. Ayres, 7 Dana, 376; Harrison County v. Wall., 11 R., 223.

ROBERT HARDING, ATTORNEY FOR APPELLEE.

The lower court properly sustained a demurrer to the petition and dismissed same.

We contend:

1. That the court of claims of Mercer county had no power or authority to establish public hitching posts for the convenience of the public, and that the agreement or contract with appellant is void and there can be no violation of a void contract.

2. The seven trustees whose names appear to be signed to this written contract had no power to make a contract by which the streets of Harrodsburg should be converted into a place where horses and vehicles should stand, thereby obstructing public travel thereon, and creating a public nuisance.

3. The allegations of the petition that the city by injunction proceedings in the Mercer circuit court has prevented appellant from replacing these posts and chains, and by ordinance duly passed forbidding persons from hitching horses upon the court house square under a penalty of five dollars for violation of same, make it apparent that the petition does not state a cause of action.

### AUTHORITIES CITED.

Wortham v. Grayson County, 13 Bush, 57; Downing v. Mason County, 87 Ky., 212; Mercer County v. City of Harrodsburg, 23 R., 1744.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

On October 3, 1883, the appellant and appellee made a contract by the terms of which the appellant surrendered to appellee seven feet of ground on the north side of its public square in Harrodsburg, and a like amount on the south side, both strips extending the width of the square from east to west; and appellant agreed to build a fence on the new line, and a good brick pavement on the land surrendered, for which land and the improvements made the appellee granted to the appellant the right and priv-

Mercer County v. City of Harrodsburg.

ilege to erect hitching racks on the old line, and to perpetually maintain them. Appellant's petition sets up this contract, and that in keeping with it the county surrendered the lands, which were of the value of $2,500, and made the improyements at a cost of $700, to recover which this action was brought, after which it erected the hitching racks, and maintained them as contemplated by the contract until May 19, 1900, when appellee forcibly tore down the racks, removed them, and then denied the right and privilege of appellant to erect and maintain the racks. The petition fails to state that the racks were torn down without right, but says that they were prohibited from re-erecting the racks "by injunction proceedings in this honorable court;" and, further, that the city, by an ordinance duly passed, and entered on its records, had prevented all persons from hitching horses on the courthouse square under a penalty of $5 for each violation. To the plaintiff's petition appellee filed a demurrer, which the lower court sustained, and this cause is here on appeal from that judgment.

From the petition it seems clear that this contract was valid and binding upon the parties when made, and each party continued to receive the benefits of the consideration from the date thereof until the year 1900, a period of seventeen years. This court also gathers from the petition that in 1900 the use of the racks became a nuisance, and that they were necessarily removed. A hitching rack is not *per se* a nuisance, and this court has so held in the case of Harrison County v. Wall, 11 R., 223, 12 S. W., 130. And also in the case between the same parties to this action, 23 R., 1744 (66 S. W., 110, 56 L. R. A., 583). In the last case referred to the court said: "While the hitching posts and chains were not a nuisance in

themselves, they became a nuisance from the hitching of horses to them.    They were placed there for horses to be hitched to them, and the removal of the posts and chains was the only way to abate the nuisance." And again, the court said: "The city was not estopped by the contract made in the year 1883. As population increases, things become nuisances which occasioned little inconvenience when the population was not so dense, or the traffic so great. The contract of 1883 did not contemplate the creation of a nuisance.    The town trustees could not have legalized a nuisance if they had contemplated it."    At the time this contract was entered into in 1883, and appellant accepted the hitching posts as the consideration for the strips of land, it so accepted same with the knowledge that it might, on account of the growth of the city and the county, and the great and continued use of the same, become a nuisance, and therefore be compelled to surrender same for the public good and health.    And it appears from the petition that this occurred in 1900.    Appellant received a good and valuable consideration, and had the benefit of it for seventeen years, but owned and used it all the time subject to the public welfare; and the appellee did not, by any act or omission, cause it to become a nuisance, but it was caused by the natural and to be expected growth of the city and the county, and the great use to which it was put by reason thereof.    In 1 Bush, p. 143, 89 Am. Dec., 616 (Ashbrook v. Commonwealth), these principles are enunciated: "The pursuit of a noxious trade is lawful so long as it does not interfere with the rights of the public; but when it does so interfere with these superior rights it becomes illegal, and no length of time can sanctify it, as its exercise is a daily renewal of the offense.    Whilst many private rights will be protected from public invas-

ion because not necessary to the public good, yet most of the individual rights are held subordinate to the public welfare." The appellant entered into this contract with the knowledge that the hitching rack might become a nuisance. The contract was fairly made, and appellant took upon itself the risk of its becoming and being declared a nuisance; and, whatever may be the apparent, hardship of losing the use and benefit of its consideration, it was brought about by its own voluntary undertaking, and it is therefore entitled to no relief. To this effect is Griswold v. Taylor's Administrator, 1 Metc., 231.,

For these reasons the judgment of the lower court is affirmed.