Argued 16 July, decided 20 August, 1907.

## LEAVENGOOD *v.* McGEE.

91 Pac. 453.

APPEAL—DISMISSING BECAUSE OF DEFECTIVE RECORD.

1. A suit will not be dismissed because the testimony and exhibits, or either of them, have not been transmitted to the supreme court with the rest of the record, as required by Section 553, B. & C. Comp., Subd. 1 and Rule 1 of the court, since there may be questions in the case not arising on the testimony.

EFFECT OF MOTION TO DISMISS—COMPLETING RECORD.

2. A motion to dismiss an appeal for want of specified parts of the record may be treated as a suggestion of diminution, and the court may in its discretion allow the record to be completed rather than dismiss the appeal.

CREDITOR'S SUIT—NECESSITY OF LIEN BY PLAINTIFF.

3. To enable a creditor to maintain a suit to uncover hidden assets of a debtor, he must have a judgment or an attachment on specific property.

CREDITORS' SUIT BY BANKRUPTCY TRUSTEE—BASIS OF SUIT. ·

4. A trustee in bankruptcy cannot maintain a suit in the nature of a creditors' bill until he has shown by the record of the referee in bankruptcy that the claims to enforce which the suit is brought have been ascertained and established in the manner provided by the bankrupt act.

CREDITORS' SUIT—PLEADING FRAUD.

5. In pleading fraud more than a general allegation is necessary—facts must be specifically alleged showing actual fraud, or facts from which the law will construct fraud,

CONVEYANCE FRAUDULENT AGAINST SUBSEQUENT CREDITORS.

6. Constructive fraud will not support a suit by subsequent creditors to set aside conveyances, as to them the fraud must have been specific and actual.

SUFFICIENCY OF EVIDENCE.

7. The evidence in this case does not satisfactorily show the fraud claimed, and is not sufficient to support a decree for plaintiff.

WHEN CORPORATION IS DE FACTO.

8. When business which might be transacted under its articles of incorporation has actually been carried on by an organization purporting to be a corporation, such organization is a *de facto* corporation.

CORPORATION—RIGHT TO ATTACK VALIDITY OF.

9. The legality of the organization of what appears to be at least a *de facto* corporation can be questioned by the State only and in a suit brought for that purpose.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. COMMISSIONER SLATER.

This is a suit by C. I. Leavengood against James T. and Ruth McGee, the McGee Co. and Frances McGee, wife of one P. T. McGee. Plaintiff sues, as a trustee in bankruptcy of P. T. McGee, a bankrupt, to set aside, as fraudulent as to his cred-

itors, two deeds ultimately conveying to J. T. McGee certain lots in the Town of Myrtle Creek, Douglas County. James T. McGee and Ruth, his wife, Frances, wife of P. T. McGee, and the McGee Co., a corporation, are made defendants. The first of these deeds is alleged to have been made on November 29, 1897, by P. T. McGee and his wife, for the expressed consideration of $2,600, to the McGee Co., which was incorporated on that date by P. T. McGee, his wife, and son Hugh, with a capital stock of $5,000, for the purpose of carrying on a general merchandise business at Myrtle Creek. But it is alleged that no stock was subscribed or paid for; that the corporation was not organized, and for that reason had no power or authority to make or enter into a contract for the purchase of real property; that, in fact, no contract was made by and between P. T. McGee and the corporation for the purchase of real property described in the deed; but that the conveyance was voluntary, and wholly without consideration, and made with the intent and purpose of putting the title in such a condition that it could not be reached by McGee's creditors. The second deed is alleged to have been made on March 2, 1902, by the McGee Company, conveying the same property to James T. McGee, also a son of P. T. McGee, for the expressed consideration of $1,000, when the company was in failing circumstances and unable to meet its liabilities, and was in fact insolvent; that the execution of the deed was not authorized by any acting board of the corporation, and was without consideration, and was made for the purpose of putting the property beyond the reach of the creditors of P. T. McGee and of the corporation, with the intent and for the purpose of defrauding them. It is also further alleged that since the making of this conveyance P. T. McGee has had the management and control of the property thereby conveyed to James T. McGee, and has collected the rents, and has assumed to be, and is in fact, the owner of the property; that claims amounting to about $1,500 have been presented and allowed against the estate of P. T. McGee, and that the debts which are the basis of these claims were incurred at divers dates between

January 1, 1897, and December 1, 1904; that the assets of the estate amount to no more than the sum of $60. A demurrer to the complaint was interposed, assigning all of the grounds allowed by statute, which being overruled, J. T. McGee answered separately, with a general denial of the complaint, and alleging affirmatively that about March 1, 1898, P. T. McGee and his wife sold and conveyed the real property mentioned in the deed, together with some store fixtures and a stock of goods, to the defendant company for the consideration of $2,600; that the corporation held the title and the possession of the lots until December 14, 1900, when it sold and conveyed the lots to him for the sum of $1,000, which he paid, and that his transaction with the company was in good faith, without notice or knowledge of any intended fraud by P. T. McGee or by the company upon his or its creditors. The remaining defendants answered jointly to the same effect. Plaintiff replied, denying the new matter of the separate answers. The cause was referred to a referee for the taking of testimony, and, on his report coming in and being considered by the court, findings were made in plaintiff's favor, and thereon a decree was entered, setting aside each of the deeds, and the property ordered sold and the proceeds applied to the payment of the indebtedness of P. T. McGee, as allowed in the administration of his estate as a bankrupt. From this decree all of defendants appeal. REVERSED.

---

ON MOTION TO DISMISS THE APPEAL.

For the motion there was an oral argument by *Mr. James Corwin Fullerton.*

*Contra,* there was an oral argument by *Mr. Commodore Stephen Jackson.*

Opinion by MR. COMMISSIONER SLATER.

1. At the hearing in this court a motion to dismiss the appeal was entered by plaintiff on the ground that the original testimony, and other papers in this cause, on which the decree of

the circuit court was based, had not been transmitted to the clerk of this court as required by Section 553, subd. 1, B. & C. Comp., and by Rule 1 of this court: 35 Or. 587 (37 Pac. v). Before argument thereon defendants filed a counter motion, supported by an affidavit, for an order on the county clerk of Douglas County requiring him to complete the record by forwarding all the testimony and exhibits produced at the trial in the court below. A transcript in this case was filed in this court on June 15, 1906, which, besides the pleadings, includes copies of the findings, the decree, notice of appeal and undertaking on appeal. No question is made by plaintiff that any of the necessary steps to perfect the appeal were omitted or were not taken in the time required by law to confer jurisdiction upon this court of the cause, and the filing of such a transcript here did confer jurisdiction. The filing of the testimony was not necessary to confer jurisdiction, and its absence would not destroy that jurisdiction, for there may be questions arising upon the pleadings to be tried on appeal, as well as whether the decree is supported by the pleadings and the findings; but the absence of the testimony would prevent this court from trying the case *de novo* on the facts.

2. The plaintiff's motion, however, amounts to a suggestion of a diminution of the record, and the deficiency may be supplied on order at any time before the final disposition of the cause: B. & C. Comp. § 445. The motion, therefore, must be denied, and, the testimony having been received by the clerk since the submission of the case, it should be ordered filed.

MOTION DENIED.

---

ON THE MERITS.

For appellants there was a brief and an oral argument by *Mr. Commodore Stephen Jackson.*

For respondent there was a brief over the names of *C. I. Leavengood* and *Fullerton & Orcutt,* with an oral argument by *Mr. James Corwin Fullerton.*

Opinion by MR. COMMISSIONER SLATER.

3. It will not be necessary to separately consider the questions raised by the demurrer, but it will be considered and disposed of along with the merits.   On behalf of defendants the contention is made that, before a creditor can maintain a suit to set aside as fraudulent a conveyance of his debtor, he must either establish his claim by judgment or acquire a lien by attachment; and such is the rule in this State: *Dawson* v. *Coffey,* 12 Or. 513 (8 Pac. 838) ; *Dawson* v. *Sims,* 14 Or. 561 (13 Pac. 506) ; *Bennett* v. *Minott,* 28 Or. 339 (44 Pac. 288) ; *Matlock* v. *Babb,* 31 Or. 516 (49 Pac. 873) ; *Fleischner* v. *Bank of McMinnville,* 36 Or. 553 (60 Pac. 603).

4. And they further contend that a trustee in bankruptcy, having no greater authority, is bound by the same rule, citing 30 Stat. 566, c. 541 (Section 70, subd. "e," Bankr. Act Cong. July 1, 1898: U. S. Comp. St. 1901, p. 3452), which is as follows :

"The trustee may avoid any transfer by the bankrupt of his property, which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication.   Such property may be recovered or its value collected from whoever may have received it, except a *bona fide* holder for value."

This rule that a creditor must reduce his claim to a judgment before he will be allowed to attack in a court of equity a conveyance of his debtor for fraud is based upon two reasons: (1) That the claim must be a liquidated claim, so that an equity court will not be required to stop and inquire into the validity of the claim.   The object of a creditors' bill is not to ascertain or determine the amount and validity of the claim or debt, but that is the province of the law.   (2) A judgment and the issuance of an execution and its return *nulla bona* is required as an evidence that all the remedies at law have been exhausted before resort is made to equity.   This is the reason of the law, but there are exceptions to the general rule: Note to Section 1415,

Pomeroy, Equity. A judgment is not necessary to enable a trustee in bankruptcy to maintain a suit to set aside transfers of property by the bankrupt in fraud of creditors, since under the bankruptcy act neither the trustee nor the creditor whom he represents could obtain such a judgment: *Mueller* v. *Bruss,* 112 Wis. 406 (88 N. W. 229). But a method is provided by the procedure in bankruptcy whereby the claims of creditors may be legally adjudicated and before the trustee should be permitted to attack by a suit in equity the conveyance of the bankrupt he shall allege and prove by the record of the referee that such procedure has been followed and that the claims on which he bases his contention have been ascertained and established. In this case the claim of Edwin Weaver, amounting to $97, dated January 8, 1901, is, according to the contention of plaintiff, of some importance, because of the close proximity of the date of its occurrence to the date of the deed from the McGee Company to James T. McGee. But the rightfulness of it is assailed by the defendants, who claim the note upon which the claim is based has been paid in full and $3.72 overpaid. The claim has not been acted upon by the referee, and hence it cannot be made a basis for a suit of this character.

5. It is difficult, however, to determine from the averments of the complaint upon what particular ground of fraud plaintiff relies to avoid the deeds. It is alleged that the deed by McGee and wife to the corporation was made with the intention of putting the title beyond the reach of his creditors, and that it was in fraud of his creditors; but it is not alleged that McGee at that time had any creditors, nor that he was then in failing circumstances or insolvent, and that the property conveyed was all of the property possessed by him at that time—facts necessary to be alleged to make a case of constructive fraud. It is alleged that P. T. McGee was adjudged a bankrupt on December 1, 1904, in the District Court of the United States for the District of Oregon, and "that the debts which are the basis of said claims filed against said bankrupt estate were made and incurred at divers dates between the 1st day of January, 1897,

and the 1st day of December, 1904"; but, while that allegation may be true, it does not follow therefrom that any of the debts presented and allowed were incurred or existed on or prior to March 1, 1898, the date of the first deed.    There must be alleged and proven facts out of which a constructive fraud will arise by force of law, or facts constituting actual or expressed fraud.    "And the rule is that the facts upon which fraud is predicated must be specifically pleaded.    A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice.    It presents no issue for trial, and is bad on demurrer.    Such an averment not only renders the bill or complaint demurrable, but it will not even sustain a decree": 20 Cyc. 734; *Leasure* v. *Forquer,* 27 Or. 334 (41 Pac. 665).

6. To avoid a deed as to future creditors, constructive fraud will not be sufficient, but express fraud is essential.    "If a creditor assails a conveyance made before the debt was contracted, he must as a rule allege and prove that the conveyance was made with the intent to put the property beyond the reach of creditors with whom the grantors intended to deal upon the faith of his owning the property transferred, and that upon that faith he did contract debts which he did not intend to pay" (20 Cyc. 738), or that "the transfer was made with a view of entering into some new and hazardous business, the risk of which the grantor intended to be cast upon the parties having dealings with him in the new business.    Such conveyance is fraudulent as to subsequent creditors and may be attacked by them.    However, a mere expectation of future indebtedness, or even an intent to contract debts, if it be only an intent, not coupled with a purpose to convey the property in order to keep it from being reached by the creditors, will not make the deed invalid as against such future creditor": 20 Cyc. 425.

7. We do not find such averments in the complaint, nor any evidence in the record tending to prove any of such requirements.    The facts which we gather from the record are about as follows:    For many years prior to March 1, 1898, the date of the first deed, P. T. McGee had been engaged in a general

merchandise business at Myrtle Creek, with his son Hugh as
an associate. In 1895 their store was destroyed by fire, at which
time they had a stock of goods estimated in value by them at
about $20,000, all of which was destroyed. They had insurance
to the amount of $8,000; but, payment being resisted, they com-
promised for $4,000 and received that amount. With this sum,
to which was added $2,000 borrowed by P. T. McGee from the
State school fund upon a mortgage of his and his wife's farm,
they paid all their debts and resumed business in a small
way. Desiring to change the manner in which they had pre-
viously been doing their business, they incorporated the McGee
Co. on November 19, 1897, with a capital of $5,000; P. T.
McGee, his wife, and son Hugh being the incorporators—the
former being the main stockholder, while his wife and son had
only a nominal interest. The stock of goods, store fixtures, and
the lots described in the deed were turned in to the corporation
in payment for his interest in the stock; and to accomplish the
transfer of the lots he and his wife, on March 1, 1898, made
the first deed to the corporation which is assailed. This deed
was recorded on March 2, 1898. The store business was then
conducted in the name of the corporation for some three or
four years. On the 14th day of December, 1900, the corpora-
tion conveyed the lots by deed to James T. McGee, another son.
This deed was acknowledged January 14, 1901, and was re-
corded January 17th following. The consideration expressed
therein is the sum of $1,000, which the grantee swears he paid
the corporation in money, by having loaned to it at some time
previous thereto the sum of $200, and at another time $400,
which amounts the corporation was owing him at the date of
the making of the deed, and the balance of the consideration,
namely $400, he paid the corporation at the time of receiving
the deed. This testimony is corroborated by P. T. McGee, and
we do not find anything in the record tending to rebut it. P.
T. McGee continued to occupy the premises, living in one of
the old buildings thereon, and renting and collecting and re-
ceiving the rent from the other buildings, giving the receipts,

sometimes in his own name, and at other times in the name of
James T. McGee, his son. In one instance he executed a lease
to another in his own name for a portion of the premises. The
rents were used by P. T. McGee in making repairs and for his
personal expenses; but for a short time James used and occu-
pied a part of the premises for a blacksmith shop and built a
shed or addition to one of the buildings, in which he stored for
a time some farm machinery. James and his father both swear
that the latter was allowed to occupy a portion of the premises,
which had always been his home, and to manage and rent the
remainder, and to keep the rents as an offset and exchange for
the rent of the farm belonging to P. T. McGee and his wife,
which James was living upon without the payment of any other
rent; and it also appears that James always paid the taxes upon
the property in controversy. Some time after the conveyance
by the corporation to James of these lots it ceased to do busi-
ness, and P. T. McGee resumed business in his own name, and
it was during that time that most of the debts now claimed
against him were incurred.

On the 9th day of November, 1904, he filed his voluntary
petition in bankruptcy in the United States District Court of
the District of Oregon. Plaintiff was appointed his trustee and
qualified. Claims to the amount of about $1,500 were presented
to the referee, and most of them were allowed; but of these
none were incurred prior ·to March 1, 1898, the date of the
insolvent's deed to the corporation, and the only debts which
were incurred by McGee before January 21, 1901, the date on
which he acknowledged for the corporation its deed to James,
are as follows: The claim of the Acme Harvesting Company
for $57, which was incurred September 29, 1900, and the claim
of Edwin Weaver, dated January 3, 1901, already referred to
as not having been ascertained and allowed by the referee in
bankruptcy at the time of the commencement of this suit and
at the time of the taking of the testimony. All the remaining
claims were incurred by McGee from one to three years after
the date of the corporation deed to James. It also appears

from the testimony that during all this time, and up to March 11, 1902, he owned his equity of redemption in the farm and four other lots in Myrtle Creek, which were of considerable value; for on that date he mortgaged them to Kate Miller to secure the sum of $200. So that it does not appear from the evidence that there were any facts from which a presumption of constructive fraud could arise, nor any tending to establish express fraud by McGee, when making his deed to the corporation on March 2, 1898. So that, if the corporation was such a legal entity as to be capable of receiving and conveying title to another, plaintiff must fail, unless a case may be made of a reservation by P. T. McGee of some secret interest or title in the property in fraud of his creditors.

8. Plaintiff alleges and contends that the McGee Company was not legally organized as a corporation; that no stock was taken or subscribed, and no officers were elected; and hence, he concludes, as a corporation it could not contract for or purchase or take the title to real property, nor could it convey the title to another. But plaintiff offers in evidence a certified copy of articles of incorporation of the McGee Co., which appear to have been properly executed on November 29, 1897, and were filed with the county clerk and recorded December 5, 1897, with power therein conferred upon the corporation, among other things, to run and operate a general country merchandise store and to buy and sell real property. The offering of the certified copy of the articles of incorporation makes a *prima facie* case of the legal existence of such corporation and of its right to do the business mentioned in the articles: Laws 1905, c. 50, p. 111, § 1. P. T. McGee swears that the corporation was fully organized, with a full complement of officers, and that it conducted a general merchandise business for several years. This, taken with the fact that the corporation executed, by Hugh McGee as its president, and P. T. McGee, as its secretary, the deed conveying the premises to James, shows that it has attempted to do the business which it was authorized by its charter to do, and this established it at least as a corporation *de facto.*

9. Under these circumstances the legality of its organization cannot be inquired into in any action other than by the State: *Marsters* v. *Umpqua Oil Co.* 49 Or. 374 (90 Pac. 151). And it is well settled that a conveyance of property to or by a corporation *de facto* will be binding and valid as against all parties except the state: *Finch* v. *Ullman,* 105 Mo. 255 (16 S. W. 863: 24 Am. St. Rep. 383).

The corporation, then, having taken the title to the lots in question by the deed to P. T. McGee and wife, executed on March 1, 1898, free from any fraud of the grantor, its title would not be affected by any of his subsequent creditors, unless the conveyance is made with the intent to defraud future creditors; but, as we have already seen, there is no averment in the complaint that P. T. McGee, when he and his wife made the conveyance, intended to deal with these creditors in the future and to incur these subsequent debts on the faith of his ownership of the property in question, nor is there any proof to that effect; nor is there any averment that when the conveyance was made he was about to engage in a hazardous enterprise, and that it was made so as to throw the burden of loss on his anticipated creditors, but the proof shows that, by conveying the property to the corporation and the business being thereafter conducted in the name of the corporation, the property was exposed to all the hazards of the business of the corporation, and hence it could not have been that such fraud was intended. The evidence, we think, shows quite clearly that, when James T. McGee took the title from the corporation by its conveyance, he paid the consideration expressed in the deed, and that there was no secret reservation of any interest therein by P. T. McGee. The explanation of the subsequent possession of the premises by P. T. McGee is sufficient to satisfactorily rebut any possible inference that might otherwise arise from such facts that P. T. McGee had retained a secret interest in the property.

For these reasons, it follows that the decree should be reversed, and one entered here dismissing the complaint.

MOTION DENIED: REVERSED.