SMITH et al. v. EDWARDS et al.

No. 5121.   Decided December 31, 1932.   (17 P. [2d] 264.)

246

*Robinson & Robinson* and *A. B. Morgan,* all of Provo, for appellants.

*H. C. Allen* and *E. R. Christensen,* both of Salt Lake City, and *Abe Turner,* of Provo, for respondents.

MOFFAT, District Judge.

The defendants are the appellants. The plaintiffs are the respondents. We shall generally refer to them as plaintiffs and defendants, specifying them by name or otherwise when necessary.

On the 6th day of December, 1920, the defendant George H. Edwards and his wife conveyed to their son, Lawrence Edwards, also a defendant, by warranty deed, two tracts of land aggregating about 66 acres generally referred to in the evidence as tracts B and C.

On the 8th day of December, 1920, a deed passed between the same parties of like import for two additional tracts of land designated D and E. On the 6th day of December, 1920, the defendant George H. Edwards and his wife conveyed to their son, Elmer Edward,s four tracts of land

aggregating about 58 acres, and referred to by exhibits and evidence as tracts F, G, H, and I. The stated consideration in each of the deeds is "for the sum of one dollar and other good and valuable consideration." In addition to the stated consideration in the granting and consideration clauses, in the body of the deeds to Elmer, two of the tracts, G and I, are each stated to be "subject to a mortgage of $1,000.00 which the grantee assumes and agrees to pay as part of the consideration." All of these deeds were duly filed for record in the county recorder's office of Wasatch county, Utah, on December 23, 1920. There was also a deed of conveyance from George H. Edwards and his wife to Lawrence Edwards bearing date the 13th day of January, 1919, and referring to a tract of land designated in the evidence and exhibits as tract A. This deed was recorded on the 14th day of January, 1919, in the office of the recorder of Wasatch county, Utah. The trial court found and decided that the conveyance relating to tract A "was not fraudulent and the same is valid as against any claim of the plaintiffs or intervenor," and no question as to tract A is presented upon this appeal. (D. H. Wenger, trustee, is sometimes referred to as plaintiff and sometimes as intervener.)

The object of the proceeding is to set aside the conveyances and subject the property to the claims of creditors. As disclosed by the evidence aside from the claims and interests and equities of any parties to this proceeding, there are interests and equities of other parties not parties hereto that would involve much litigation to determine, if the judgment of the trial court is to stand. Nearly if not all of the property was, subsequent to the conveyances, and long prior to the bringing of this action, mortgaged by the grantees which mortgages were, in most instances, still unpaid at the time of the trial of the cause.

The allegations of the complaint are of a general character. In response to the charge of the defendant that the complaint is defective in that it contains no allegation with respect to actual or constructive fraud and that no facts are

pleaded from which actual or constructive fraud can be inferred, the plaintiffs (respondents) in summary of the allegations of their complaint state:

"There can be found * * * the allegation that the conveyance was voluntary, was made with the fraudulent purpose and intent of defrauding the creditors of said George H. Edwards, and especially these plaintiffs, in which fraudulent intent and purpose the said defendant (naming the grantee in that particular deed) participated. * * * That each and all of said conveyances was made and recorded without consideration and while the said defendant George H. Edwards was indebted in large amounts of money * * * and all were made for the purpose of placing said property beyond the reach of his creditors, and the same were made as a part of a conspiracy and scheme of the said defendants George H. Edwards, Lawrence Edwards and Elmer Edwards to defeat the just claims of the creditors of said grantor, and ever since the same were made the said Grantor has continued to have and use the said lands, and enjoy the rents, income and profits therefrom, and the said defendants Lawrence Edwards and Elmer Edwards have always, and do now hold the said titles to said parcels of land in secret trust for the defendant George H. Edwards,"

and particularly paragraph 13 contains an allegation of insolvency.

Paragraph 13 reads:

"That by reason of said conveyances the said George H. Edwards rendered himself unable to pay his creditors without resorting to said lands."

Paragraph 16 of the complaint not referred to by counsel for plaintiffs contains the following statement:

"That unless said conveyances are set aside the said defendant George H. Edwards is and will be wholly insolvent, and that plaintiffs are without any adequate remedy in the ordinary course of law."

Counsel for plaintiffs then add:

"Nothing more could be added which would make a more forcible and complete allegation of fraud, and facts constituting fraud in these conveyances."

Stripped of its tautology it may well be doubted whether the alleged allegations of the complaint amount to more than saying, the conveyances were voluntary and fraudulent. A conveyance without consideration is voluntary, but not for that reason alone fraudulent. That a conveyance was made while one is indebted "in large amounts of money" is not necessarily fraudulent; but combined with other facts and circumstances, may be. Neither is a conveyance necessarily fraudulent because it is made without consideration and while one is indebted in large amounts of money. One may still have ample resources to pay all of the "large amounts of money" and all other indebtedness if such should exist at the time of making the conveyance, or as they mature.

The allegations that the conveyances were made for the purpose of placing the property beyond the reach of creditors and were made as a part of a scheme, without the statement of facts from which the purpose may be inferred, and without stating the facts constituting the scheme amount to no more than saying the conveyances were fraudulent. To allege the holding of land in secret trust for another is alleging no more than that the land is being held fraudulently. The allegation that a grantor remains in possession of land after its conveyance is an allegation of fact, and such fact may or may not prove fraud. The allegation that one receives the rents, issues, and profits of property after its conveyance is an allegation of fact, and, if proved, may or may not support a charge of fraud. The allegation that "by reason of said conveyances the grantor rendered himself unable to pay his debts or became insolvent" without specifying the amounts, values, parties, or circumstances are conclusions and to be available for the purpose of supporting proof must be amplified by alleging facts sufficient to support the summarized conclusion, even if not attacked by demurrer or motion.

The Uniform Fraudulent Conveyances Act, Laws of Utah 1925, c. 42, defines, among other things, "Insolvent person."

This statute is not only a declaration of the law of this state now, but is a fair declaration of what constitutes an insolvent person under generally accepted authority. Section 2, subd. 1, reads:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

To allege that a person is "insolvent" is alleging a pure conclusion. Under the statute such a statement must be amplified by allegations of fact as to the amount of money required to pay his probable existing liabilities as they mature, also by an allegation of what the fair salable value of his property is, and that such "present fair salable value is less than the amount that will be required to pay" his existing debts specifying the amounts, and when they will mature.

To the complaint the defendants interposed both a general and a special demurrer. Both were overruled, and error is assigned therefor. The general demurrer is not argued though much might be said in support of the general demurrer.

The defendants contend that the complaint is uncertain and unintelligible in that it cannot be ascertained or determined from the allegations of the complaint, what acts of fraud the defendants had been guilty of with respect to the transfers in question. The learned judge of the trial court in overruling defendants' demurrer made reference to the Uniform Fraudulent Conveyances Act, supra, passed in 1925, indicating that because of the act the complaint was sufficient. The conveyances sought to be set aside had been made in 1920, about five years before the passage of the act and more than seven years before the action was brought. It is asserted, however, that the alleged fraud was not discovered until 1926, or about a year after the passage of the act. In so far as the cause of

action related to matters occurring prior to the act, the act would have no effect. Wherein the act is merely declaratory of what the law was at the time of the conveyance, it would make no difference. The provisions of the act are in harmony with the general law on the subject.

27 C. J. 772:

"In the absence of some specific statutory provision, the rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion and will not suffice; it presents no issue for trial and is bad on demurrer."

*Goebel* v. *Gregg*, 57 Cal. App. 651, 207 P. 917, 918:

"It is a general rule that a deed of gift is valid if the grantor was not indebted at the time he made it, or if he had other means outside of the property conveyed with which to pay his indebtedness." There is an exception to this rule which "is based upon the fact that if the debtor secretly and without the knowledge of one with whom he contracts an indebtedness transfers his property without consideration, knowing that the creditor in dealing with him relies upon his ownership thereof, it constitutes actual fraud, and upon a showing of such facts such transfer may be annulled."

*Leavengood* v. *McGee*, 50 Or. 233, 91 P. 453, 456:

"There must be alleged and proven facts out of which a constructive fraud will arise by force of law, or facts constituting actual or expressed fraud. 'And the rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud, is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial, and is bad on demurrer. Such an everment not only renders the bill or complaint demurrable, but it will not even sustain a decree.'" Citing 20 Cyc. 734; *Leasure* v. *Forquer*, 27 Or. 334, 41 P. 665.

It is not necessary to quote additional authority to support the principle. Where there is a valuable consideration or as the statute provides "a fair consideration," which is stated to be the fair equivalent therefor and not ■ disproportionate to the value of the property con-

veyed the requirement as to allegations and proof of fraud is more exacting.

The complaint makes no distinction between the alleged creditors of the grantor whether subsequent or prior to the conveyances. Nor is it alleged the amount of indebtedness, nor the value of the land conveyed, nor the value of the assets remaining after the conveyances. The evidence shows that the claims of all of the creditors, except Smith and possibly one other, were claims that arose subsequent to the making of the conveyances. There is something said in argument as to another creditor being prior; but no distinction is made either in the alleged findings or decree.

Where the defendants, especially Lawrence Edwards and Elmer Edwards, were in possession, occupation, and use of the property and paying taxes thereon in pursuance of a deed duly recorded, it is incumbent upon the plaintiffs to allege and prove that, as grantees, they did certain acts which misled the plaintiffs, or held themselves out in a way that misled plaintiffs, and that plaintiffs had knowledge and relied thereon. This aside from the question of consideration. As to claims arising after a conveyance is made and placed upon record, it is imperative that a creditor, before he can set a conveyance aside, must allege and prove that he was misled by some overt act into believing something different from what the record showed, and of which he was bound at that time to take notice of the contents.

There is a peculiar inconsistency of allegation of the complaint when compared with the plaintiffs' theory of recovery. As to the plaintiff Thomas H. Crook it is alleged that the indebtedness was contracted upon the faith of defendant's (George H. Edwards) continued solvency, "and with the knowledge that he had long been solvent and the owner of said property." As to the plaintiff Wright, it is alleged that the indebtedness was contracted upon the faith and because of the knowledge that said debtor had been solvent and was still the owner and apparent owner of the

property conveyed. This indebtedness was not contracted until May, 1922, or more than two years after the conveyances were placed of record in the recorder's office. As to the Kohler minors substantially the same allegations are made and yet the evidence shows without contradiction that Mr. J. C. Jensen was the guardian of those same minors at the time he prepared the very deeds sought to be set aside upon the ground of a belief that George H. Edwards was the owner. Besides Mr. Jensen was an abstracter and familiar with the records of Wasatch county. The record contradicted such "knowledge," and there is neither allegation nor proof that defendants said or did anything inconsistent with the record notice.

There is neither allegation nor proof that George H. Edwards made an affirmative statement to any person that he was the owner of the conveyed premises, that there was any affirmative act or conduct by which a creditor could be said to be thrown off his guard, or act, representation, or misrepresentation by which a creditor was induced to extend credit upon reliance that he said he was the owner of the property either before or after the conveyances were made, or that Elmer or Lawrence intimated they were not the owners as shown by the record.

As heretofore indicated, the plaintiffs allege that credit was extended upon the knowledge and belief that George H. Edwards was the owner of the conveyed property. If plaintiffs knew that he was the owner of the property, such knowledge must have been obtained from a source other than that of George H. Edwards, or the other defendants in so far as either allegation or proof is concerned. The undisputed evidence is that George H. Edwards moved off the conveyed tracts in June, 1921, about six months after the recording of the conveyances and that Lawrence and Elmer from the time of the recording of the deeds were in actual occupation and use of the property. The only other sources of information as to title to this property would be the records in the office of the county

recorder of Wasatch county, or from some interested or disinterested third persons. No information is shown to have originated from any source other than the record itself. In such case the burden is upon plaintiffs to show the information, and, if such information is material, it should be pleaded.

The statute raises a presumption of notice, and, when plaintiffs allege they have knowledge when the credit was extended, it is not easy to discover how such information could be theirs at the time of extending the credit and yet not be disclosed as found by the court till 1926 or about six years after the conveyances were made and recorded.

The defendants pleaded that the causes of action are barred under the provisions of Comp. Laws Utah 1917, § 4900, and subdivision 4, § 6468. Section 4900 provides:

"Every conveyance or instrument in writing affecting real estate, executed, acknowledged, or proved, and certified in the manner prescribed by this title, * * * required by law to be recorded in the office of the county recorder, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lienholders shall be deemed to purchase and take with notice."

Subdivision 4 of section 6468, is as follows:

"An action for relief on the ground of fraud or mistake, three years; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

The parties agree the statute of limitations is three years. They divide on the question of discovery. They approach the question differently.

Some argue the recording of the deed imparts notice to all persons of the contents thereof and constitutes such notice as will start the statute of limitations running as to a creditor who may claim to be relying upon ownership, or implied ownership, of property as shown by the state of the record. Some argue otherwise. Some aspects may be examined: (1)

Was the conveyance itself the fraud? or (2) was it fraud because the conveyance purported to be voluntary or without consideration? or (3) did the conveyance produce discoverable insolvency at the time it was made? If the conveyance itself constituted the fraud, its recordation was notice of its contents to all persons.

The statutes and all the authorities agree that, if a fair consideration is given for the property or obligation, the transaction, contract, obligation, or conveyance may not be attacked because of the insolvency or inability of the debtor to pay his obligations. The authorities likewise hold that a fair consideration is given "when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained." Uniform Fraudulent Conveyance Act, § 3.

The conveyances attacked all contain the statement of consideration of "one dollar and other valuable considerations" and one of them contains in addition the statement that two of the tracts are each subject to a mortgage in the "sum of $1,000.00 which the grantee assumes and agrees to pay."

Under the statute from the time of filing the conveyance with the recorder it shall impart notice to all persons of the contents thereof. From the time of recording these conveyances all persons, including plaintiffs, notice was imparted to them that the conveyances contained the statements above quoted. That the plaintiffs and all other persons had notice that such conveyances had been made and recorded seems to go without saying, for surely, if one is charged with notice of the contents, he must be charged with notice of the existence of the document itself. When the document contains a statement of facts indicating that there was given for the property a fair consideration

when as a fact no consideration at all had been given, a very different situation is presented than a document showing on its face that there was no consideration or only a nominal consideration. Under such circumstances all persons would be entitled to rely upon and would have imparted to them the information contained in the contents of the document, and until some information came to hand sufficient to put a reasonably prudent person upon inquiry he would be entitled to rely upon the contents of the document. It may be argued that fraud in the first situation consisted of the false statement contained in the document, because no consideration passed and there is the false statement in the document that there was a valuable consideration. The fraud was committed at that time but may not have been discoverable then. A creditor would not discover the falsity of the statement until other information was brought to his attention sufficient to put him on inquiry.

In this case the contents of the conveyances were of record and imparted notice of the contents and what the consideration was as shown thereby and all persons might be expected to inquire forthwith of what the "other valuable considerations" consisted, if the truthfulness was doubted and failing to do so would cause the statute to run from the time when a reasonably prudent person would have acted and thereby discovered falsity if it existed.

In the case of *Stivens* v. *Summers*, 68 Ohio St. 421, 67 N. E. 884, a father and mother conveyed lands to two of their sons, rendering the father insolvent while indebted. The deeds recited a good and valuable consideration. Notes, however, were given payable to the administrator after the death of the surviving grantor. The court says: (page 886, of 67 N. E.)

"Since the action could not be maintained but for the facts found respecting the financial condition of the grantor at the time of making the deeds, and since the record did not disclose those facts, it cannot be said that the fraud was discovered until the plaintiff, from a different source, received notice of such facts. A deed fraudulent as

to creditors may recite the payment of a full and valuable consideration by the grantee, and an examination of the record would not disclose to a creditor of the grantor that a cause of action has accrued in his favor."

The citation just quoted and the one following indicate the difficulty which exists in suits of this character. The difficulty arises, not out of the enunciation of well settled principles of law, but out of making application of those well settled principles to the facts and circumstances ■ of the particular case. Unless the notice referred to in Comp. Laws Utah 1917, § 4900, means what it says then one is left to trace out from the uncertainties of human activities, memories, and conflicting interests what the facts were. Evidently the statute was intended to constitute notice of the contents of the recorded document, without reference to place of residence or otherwise.

Under Comp. Laws Utah 1917, § 6468, the provision is clear that the limitation does not begin to run until the facts constituting the fraud are discovered. There is therefore a great deal said in the cases about what amounts to discovery.

*Chinn* v. *Curtis* (Ky.) 71 S. W. 923, 924. The evidence showed that the father and son lived together. There was no change of possession. The son did not pay the taxes. The father was insolvent. The son paid $400 to the father which was found to be inadequate. As a part of the judgment the court held the conveyance should be set aside, but the son was entitled to a lien against the property for the $400, and further held that

"the recording of such conveyances is important in establishing the time of the perpetration of the fraud, but it throws little light, of itself, upon the question of discovery. It is admissible evidence on that question; and when the manner of its execution and registration, and other facts and circumstances in the case, would be sufficient to put a person of prudent mind upon inquiry, the law declares this to be notice, because he should have made the inquiry, and will be held to have done so, whether he did or not."

The language of the Utah statute, Comp. Laws Utah 1917, § 6468, subd. 4, upon the provision referring to "discovery," contains the following language:

"The cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

In the case of *Duxbury* v. *Boice*, 70 Minn. 113, 72 N. W. 838, 839, the Minnesota court, in construing a statute in which the words, "the discovery by the aggrieved party of the facts constituting the fraud" are discussed, proceeds to say:

"The facts constituting the fraud were the conveyance by the debtor with intent to defraud his creditors. When an action for relief * * * is not commenced until more than six years after the commission of the acts constituting the fraud, the burden is on the plaintiff to allege and prove that he did not discover the facts constituting the fraud. * * * The question is, what constitutes a 'discovery' within the meaning of the statute? Mere constructive notice of the deed by reason of its being filed for record is not notice of the facts constituting the fraud. * * *

"To ascertain what constitutes 'a discovery of the facts constituting the fraud,' reference must be had to the principles of equity. * * * Hence, in actions in equity, the rule was that the means of knowledge were equivalent to actual knowledge; that is, that a knowledge of facts which would have put an ordinarily prudent man upon inquiry which, if followed up, would have resulted in a discovery of the fraud, was equivalent to actual discovery."

The evidence discloses: The deeds were made and recorded in December, 1920. The deeds contained, among other things, the statement "for one dollar and other good and valuable considerations." At least one of the deeds contained an agreement to assume and pay two mortgages against the property conveyed in the sum of $1,000 each. There was a change of possession within about six months after the conveyances. The property was mortgaged by the grantees. All of this information could have been obtained readily upon inquiry. No inquiry of any nature seems to have been made. All parties believed, as shown by the evi-

dence, that there was no financial difficulty until the year 1923, to cause either debtor or creditors to suspect financial trouble or threatened insolvency. The evidence also indicates without serious conflict that, after the conveyances were made, the grantor was worth, upon the estimated values prevailing at that time, much more than his indebtedness. Subsequent losses and depreciation account for insolvency. One of the creditors testified that he probably had actual notice of the conveyances as early as 1923.

The trial court held that the deed executed to Lawrence in 1919 was not fraudulent. The other deeds were executed and filed for record in December, 1920. George H. Edwards and his wife moved in the following June, 1921, out of the house on one of the tracts conveyed, and Elmer and Lawrence moved into the house then vacated by their father and mother and remained in occupancy until the time of bringing suit in 1927. The grantees paid the taxes, received the rents and profits, and were in open exclusive possession for more than six years before the bringing of suit. None of these facts are seriously disputed. There are some assumptions by some witnesses that George H. Edwards was in possession, because he was occasionally seen upon some of the conveyed premises, or that some of the proceeds sold by the boys were applied upon indebtedness of their father.

There is not a word of testimony in the record that the defendant George H. Edwards made any representation to any creditor that he was or ever had been the owner of any of the lands in question other than what might arise by implication out of a course of dealing prior to the time of making the conveyances. No creditor or other person, so far as the evidence discloses, asked George H. Edwards, at the time, whether or not he was the owner of any of the lands in question at the time of incurring any of the indebtedness, nor afterward until some difficulty in collecting was experienced. The evidence seems to establish beyond question that George H. Edwards regarded himself solvent at the time of making the conveyances, and for at least three

years thereafter, and the evidence further discloses that no one else seemed to suspect insolvency until after Edwards himself in 1923 began to realize that he was in financial difficulties.

The plaintiffs have attacked the alleged consideration for the conveyances. It is not necessary to discuss the law relating to the doctrine of consideration, what it takes to constitute a good and valuable consideration or the law relating to contracts between parent and child, present, past, or future obligations.

An examination of the separate answer of the defendant Lawrence Edwards and briefly summarized alleges: That about December, 1920, George H. Edwards owed Lawrence $4,650 for wages under a specific agreement. That Lawrence and his father entered into an agreement by the terms of which Lawrence was to buy and his father was to sell to him the property in question for $10,-000. That the $4,650 was credited to Lawrence upon the obligation and that the father took a note for $5,350, payable in two years at 6 per cent interest. That in 1921 Lawrence borrowed from the state of Utah $2,500 and gave a mortgage upon the land in question and paid $2,450 upon the note. That Lawrence also borrowed from a bank (naming it) $1,000 and pledged certain personal property and paid that amount upon the note. This note to the bank was unpaid at the time of trial. These allegations in the answer of Lawrence Edwards were all proved by the testimony of both Lawrence and his father. None of it was seriously questioned by plaintiffs except that part relating to the agreement for services between father and son and the amounts. That there was such an agreement is not disputed by any competent evidence. Both father and son testify to it. No one denies it. That Lawrence worked for his father during the period stated is not questioned or disputed. There are some discrepancies between the total amount alleged and the amount that would result from the calculation of the monthly schedule and deducting such sums as may have

been drawn. Because there were some discrepancies in amounts, would not justify the disallowance of the whole amount unless the court was of opinion that there was no contract, or upon a quantum meruit for services there was nothing due. Certainly, under the evidence, the services claimed to have been were rendered. The court should have determined the amount due if there was a question as to that and if the amount due for services less the amounts paid plus the amounts subsequently paid on the alleged purchase price failed of a fair consideration, set aside the conveyances and subject the premises to a lien for the amount paid in good faith upon the transaction.

This being an equity proceeding this court may review questions of both law and fact. It is established that in reaching conclusions as to facts, the findings made by the trial court should not be disturbed unless we are convinced that they are wrong, but, when so convinced, it becomes our duty to set them aside. *Paxton* v. *Paxton* (Utah) 15 P. (2d) 1051.

Except for the discrepancies referred to, there seems no reason to doubt the truthfulness of the testimony of the grantees, certainly not sufficient to justify the conclusion that their whole testimony was so tinctured with perjury as to justify the rejection of it in toto. In fact most of the evidence in the record whether for or against either party came from George H. Edwards and his two sons. We see no good reason in the light of the whole record why their testimony should be accepted as to certain matters and rejected as to others, except where they were properly impeached, or such discrepancies existed as to particular matters as to require its rejection upon those matters.

What has been said with reference to the answer and proof of Lawrence Edwards, applies substantially, except as to amounts, difference of property, age, etc., to Elmer Edwards, and it would serve no good purpose to refer to the testimony, and elements of the situation in detail. Values vary with time, place, conditions, and circumstances, and

are largely matters of opinion. This is especially true as to lands, live stock, range rights, and other varieties of property.

The testimony in this case was permitted to take a very wide range. Most of the testimony refers to matters long after it could throw any light upon the issues in the case. It may be easy to show insolvency seven years after a transaction. The question is not the financial condition so long after but what was it at the time. To illustrate: One of the items, though small, did not arise between George H. Edwards and a creditor until 1926, or six years after the conveyances. Not the slightest suspicion of either actual or constructive fraud could have entered into the matter at the time.

In matters of this kind considerable latitude is usually granted by a trial court. The character of the case makes this necessary. The record was unnecessarily extended by the admission of much testimony so far remote as to be of no value in throwing any light upon the transactions which took place in 1920, or the financial condition of George H. Edwards at that time.

We are of the opinion that the action is barred under the statute of limitations for the reason that discovery was made, or the situation was such as to furnish full opportunity for the discovery of fraud, if any existed, more than three years before the bringing of the action. We are further of the opinion there was no fraud shown, particularly on the part of the grantees, and not sufficient on the part of the grantor to justify the setting aside of the conveyances. There was no proof of insolvency at the time the conveyances were made or for about three years thereafter. There was, to say the least, a valuable consideration, if not an adequate one, for the conveyances. Part of it the cancellation of an obligation, past, present, or closely subsequent to the time of the conveyance. It is not necessary in the light of what has been said to discuss the many errors assigned, especially those as to the findings and

conclusions. This opinion sufficiently indicates that the judgment should have been for the defendants, and that the action should have been dismissed.

Because of the errors referred to the judgment of the trial court is reversed, and the cause remanded with directions to dismiss the action. Appellants to recover costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, J., being disqualified, did not participate herein.