**2015 UT App 40**

# THE UTAH COURT OF APPEALS

NATALIE SHIOZAWA AND ULRIKE DANNHAUER,
Plaintiffs and Appellants,
*v.*
MARCI DUKE, JAMES DUKE, CHRISTOPHER DUKE, REBECCA DUKE,
AND PINE VALLEY REALTY, LLC,
Defendants and Appellees.

Opinion
No. 20130253-CA
Filed February 20, 2015

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 110917225

Aaron R. Harris and Stephen Quesenberry,
Attorneys for Appellants

Barry N. Johnson and Joshua L. Lee, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE STEPHEN L. ROTH concurred. JUDGE JAMES Z. DAVIS
concurred in the result.

CHRISTIANSEN, Judge:

¶1 Natalie Shiozawa and Ulrike Dannhauer (collectively, Plaintiffs) appeal from the district court's order granting summary judgment in favor of Marci Duke, James Duke, Christopher Duke, and Rebecca Duke (collectively, the Dukes),[1] and in favor of Pine Valley Realty, LLC, on Plaintiffs' claims of breach of contract and

---

1. When referring to the Dukes individually, we use their first names for clarity.

fraud in connection with the sale of real property. We affirm in part, reverse in part, and remand the matter to the district court.

BACKGROUND

¶2    This dispute concerns the sale of a house built in Salt Lake County in 1928.[2] The Dukes never lived in the house, which had been previously owned and occupied by James and Christopher's grandparents.[3] Before offering it for sale, the Dukes made certain repairs and improvements to the house. The Dukes performed some of this work themselves but contracted to have other aspects of the work done by licensed contractors. Christopher, a licensed plumber, installed plumbing improvements in the house. The Dukes also finished the basement. As part of this project, Christopher and James patched some of the cracks on the interior walls of the foundation. When that task was completed, a contractor installed drywall, which concealed the basement foundation from view. In addition, James and Marci patched and painted the exterior of the foundation above the ground, thereby covering some exterior foundation cracks. The Dukes also installed landscaping along portions of the exterior foundation. After completing the repairs and improvements, the Dukes offered the house for sale through real estate agent and part-owner, Marci. Pine Valley Realty acted as the broker for the house. Neither Marci nor Pine Valley Realty received any commission or compensation from the sale of the house.

---

2. "Because we are reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to . . . the nonmoving party." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 5, 215 P.3d 143 (citation and internal quotation marks omitted). Accordingly, we recite the facts in the light most favorable to Plaintiffs.

3. Marci and Rebecca are married to Christopher and James respectively, who are brothers.

¶3      On April 10, 2007, Plaintiffs executed a Real Estate Purchase Contract (the REPC), agreeing to purchase the house, subject to their approval of the seller disclosures and after physical inspection of the home. The REPC included the following warranty obligations:

> 10.2 Condition of Property. Seller warrants that the Property will be in the following condition ON THE DATE SELLER DELIVERS PHYSICAL POSSESSION TO BUYER:
> . . .
> (b) the . . . plumbing [and other] systems . . . will be in working order and fit for their intended purposes;
> (c) the . . . foundation shall be free of leaks known to Seller . . . .

On April 11, 2007, the Dukes delivered "Seller's Property Condition Disclosure" to Plaintiffs. Pursuant to this document, the Dukes agreed that they were "obligated under law to disclose to Plaintiffs defects in the Property known to Seller that materially and adversely affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent buyer." Relevant to this appeal, the Dukes' completed disclosure contained the following questions and answers:

> Q:      With the exception of an occasional clogged drain or toilet, are you aware of any past or present problems with the sewer or septic service or components, for example, broken sewer lines, consistently slow or clogged drains, etc.?
> A:      No.
>         . . .
> Q:      Are you aware of any past or present problems with termites, dry rot, rodents, or pests on or affecting the Property?
> A:      No.
>         . . .

Q: With the exception of cosmetic upgrades to the Property (such as carpet, paint, wallpaper, etc.), have you remodeled, made any room additions, made structural modifications or other alterations or improvements to the Property? If "Yes," please describe, to your knowledge, the nature of any such remodel/alteration work:

A: Yes. [A]ll new electrical, windows, furnace, a/c unit, sprinkling syst[em], new water heater, new duct work, newer plumbing, drywall, cabinets, fixtures/hardware, added motion lights southside outside, new garage door, new garage roof, etc.

. . .

Q: Are you aware of any past or present movement, shifting, deterioration, or other problems with the walls or foundation?

A: No.

. . .

Q: In reference to the basement and/or crawlspace, are you aware of any past or present water leakage, water accumulation or dampness?

A: No.

Q: Are you aware of any past or present water or moisture-related damage caused by: flooding; lot drainage; moisture seepage or condensation; sewer overflow/backup; leaking or broken pipes, pipe fittings, or plumbing fixtures; or leaking appliances, fixtures, or equipment?

A: No.

Q: Please describe, to your knowledge, any attempts to repair any moisture-related damage and/or to prevent any recurrence of water and moisture-related damage on the Property.

A: None.

¶4 In connection with their right to inspect the house as part of the sale, Plaintiffs and their home inspector walked through the house to assess its condition. Before closing, the inspector provided a written inspection report to Plaintiffs. The report noted that "[w]ater will inevitably flow towards the foundation due to the grade; such conditions can promote undermining of the structural foundation and subsequent damage." In addition, the report contained a section specifically related to the condition of the foundation of the house:

> FOUNDATION:
> The foundation was constructed of poured concrete. A single inspection cannot determine whether movement of a foundation has ceased. Any cracks should be monitored regularly. There were no major visual defects observed on the visible portions of the foundation. There were several minor, vertical cracks observed on the foundation. The cracks were 1/16-inch or less in width. These cracks did not appear to have any structural significance at the time of the inspection. Vertical cracks can be found in most foundation materials, which would include poured concrete, hollow masonry block, brick and stone. We have seen such crack patterns in all of the above noted materials. It is not uncommon to find such cracks in poured concrete foundation walls. These vertical cracks in concrete are typically very narrow, hairline to 1/16 of an inch, and usually pose no significant structural problem for a building. This type of crack is generally the result of curing and moisture shrinkage of newly poured concrete and it will commonly develop between the first several months after construction right up to two years. Parging, the stucco-sand mixture applied to foundation walls, may be added (it exists but is deteriorating in some sections) to help assuage moisture intrusion [into] such cracks.

¶5 In the section devoted to the condition of the basement, the inspection report stated, "Most of the interior walls of the basement were finished; therefore, a complete inspection of the foundation was not possible." The report continued;

> The full slab [of the basement floor] was not visible at the time of inspection because of carpet or other floor coverings. There were no indications of moisture present. There were no major visual defects observed on the visual portions of the slab. . . . MONITOR: Several curing cracks were visible on/in the slab; the cracks were less than 1/8" and do not appear to represent a serious structural concern; patching or caulking such cracks may help assuage potential movement and should be considered.

¶6 Plaintiffs completed the purchase of the house on May 10, 2007, and moved in shortly thereafter. In August 2007, the sewer line to the house backed up in the basement. Plaintiffs contacted a plumber who resolved the immediate problem. When the sewer line backed up again in August 2008, Plaintiffs hired a contractor to perform a video inspection of the sewer line. The video revealed that tree roots and dirt had infiltrated the line. Based on this information, Plaintiffs replaced the sewer line. In the summer of 2008, Plaintiffs also experienced a leak in the house's exterior hose bib faucet. During the resulting repair efforts, Plaintiffs learned that Christopher had installed the hose bib faucet's water line without a required "J-hook." Plaintiffs also discovered that Christopher had not installed a water pressure gauge in the house's plumbing system.

¶7 Between May 2007 and August 2008, Plaintiffs also noticed that some of the vertical cracks in the exterior foundation wall were beginning to widen. They contacted a foundation-repair contractor, who provided them a bid for the installation of helical piers.[4] Plaintiffs authorized the installation of one helical pier, which the

---

4. A helical pier is used to reinforce the foundation and provides additional support.

contractor installed in October 2008 under the northeast corner of the house's foundation. Rather than resolving the problem, the helical pier actually caused the cracks in the northeast corner of the exterior wall of the foundation to widen further. While addressing this issue, Plaintiffs dug around the northeast corner foundation and exposed the exterior foundation cracks that had been patched and painted over during The Dukes' remodeling efforts. Once they were exposed, Plaintiffs became concerned about the width of these below-ground, exterior foundation cracks.

¶8    At this same time, Plaintiffs noticed that mold was developing in both the northeast and southwest corners of the basement. In order to mitigate the mold, Plaintiffs removed the drywall that had been installed when the Dukes finished the basement of the house, thereby revealing the interior foundation wall. Plaintiffs discovered cracks in the interior foundation wall and noticed that some of these cracks had been patched. When Plaintiffs removed the drywall on the southwest corner of the house to mitigate the mold in that area, they discovered what they believed to be evidence of older water and termite damage to wood strips located on the west side of the basement.

¶9    On August 31, 2011, Plaintiffs filed a complaint against the Dukes and Pine Valley Realty (collectively, Defendants), asserting claims for fraudulent nondisclosure and fraudulent misrepresentation (collectively, the Fraud Claims) and for breach of contract and breach of the implied covenant of good faith and fair dealing (collectively, the Contract Claims).[5] After the completion of fact discovery, Defendants moved for summary judgment on each claim. Plaintiffs opposed the motion. After oral argument, the district court ruled that the Fraud Claims were "barred by the applicable statute of limitations . . . because the undisputed facts demonstrate that Plaintiffs were on notice of their Fraud Claims more than three years before this action was commenced." With respect to the Contract Claims, the district court concluded that "the undisputed facts demonstrate that at the time Plaintiffs took

---

5. Plaintiffs also asserted other claims that are not relevant to this appeal.

possession of the home at issue: (1) the plumbing systems were in working order and fit for their intended purpose; and (2) the seller Defendants were unaware of any leaks in the foundation." Accordingly, the district court granted summary judgment in favor of Defendants on all claims. Plaintiffs timely appeal.

## ISSUE AND STANDARD OF REVIEW

¶10    Plaintiffs claim that the district court incorrectly granted summary judgment in favor of Defendants. We review a district court's legal conclusions and ultimate decision granting summary judgment for correctness while viewing the facts and all reasonable inferences from those facts in the manner most favorable to the nonmoving party. *Basic Research, LLC v. Admiral Ins. Co.,* 2013 UT 6, ¶ 5, 297 P.3d 578; *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. Summary judgment is appropriately entered only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *Wilcox v. Anchor Wate Co.*, 2007 UT 39, ¶ 10, 164 P.3d 353.

## ANALYSIS

¶11    Plaintiffs assert that the district court erred in granting summary judgment because genuine issues of material fact exist that preclude the entry of summary judgment in Defendants' favor on the Fraud Claims and Contract Claims. Defendants disagree and ask us to affirm the district court's order. Defendants also seek to recover attorney fees incurred in defending the district court's order on appeal. We consider each argument in turn.

### I. The Fraud Claims

¶12    Plaintiffs argue that Defendants are liable for fraudulent nondisclosure and fraudulent misrepresentation. Specifically, Plaintiffs allege that while preparing for sale and at the time of the sale of the house, Defendants knew of material defects in the foundation of the house, including cracks in the interior and

exterior foundation walls, that Defendants failed to disclose to Plaintiffs. Defendants moved for summary judgment on the Fraud Claims on multiple grounds, including Plaintiffs' failure to put forth any evidence on each element of the Fraud Claims and to bring the Fraud Claims within the applicable statute of limitations. Because the district court concluded that the Fraud Claims were barred by the statute of limitations, the court did not consider any alternative bases for relief set forth in Defendants' summary judgment motion. Plaintiffs argue on appeal that the district court erred in concluding that the statute of limitations expired on the Fraud Claims before they filed their complaint.

¶13     In reaching its conclusion that the Fraud Claims were barred, the district court considered the three-year statute of limitations for fraud. A cause of action for fraud does not accrue until "discovery by the aggrieved party of the facts constituting fraud or mistake. *See* Utah Code Ann. § 78B-2-305(3) (LexisNexis 2008). This statutory discovery rule tolls the running of the three year limitations period for a fraud claim until the plaintiff discovers the facts forming the basis of the cause of action. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741. A plaintiff is deemed to have discovered a claim upon obtaining actual knowledge of the fraud or when "by reasonable diligence and inquiry [the plaintiff] should know the relevant facts of the fraud perpetrated against [the plaintiff]." *Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 17, 156 P.3d 806 (citation and internal quotation marks omitted); *see also Russell Packard*, 2005 UT 14, ¶ 22 ("Once the triggering event identified by the statutory discovery rule occurs—i.e., when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action—the statutory limitations period begins to run."). The Utah Supreme Court has further instructed that "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge." *Baldwin v. Burton*, 850 P.2d. 1188, 1196 (Utah 1993) (citation and internal quotation marks omitted). Instead, if the facts known to a plaintiff would prompt a reasonably prudent person to further investigate, the plaintiff should make further inquiry. *Id.* at 1197 & n.44. Accordingly, "it is not necessary for a claimant to know

every fact about [the claimant's] fraud claim before the statute begins to run." *Id.* at 1197; *see also Colosimo*, 2007 UT 25, ¶ 17 n.19.

¶14 Whether a statute of limitations is applicable and whether it is subject to tolling under the discovery rule are questions of law. *Quick Safe-T Hitch, Inc. v. RSB Sys. LC,* 2000 UT 84, ¶ 10, 12 P.3d 577. In contrast, the determination of when the aggrieved party reasonably should have known of the facts forming the basis of the party's fraud claim is a question of fact. *Sevy v. Security Title Co.*, 902 P.2d 629, 634 (Utah 1995); *Hodges v. Howell*, 2000 UT App 171, ¶ 15 n.3, 4 P.3d 803. Indeed, at what point a party should have reasonably discovered its claim is a fact-intensive inquiry that "'preclude[s] [judgment as a matter of law] in all but the clearest of cases.'" *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 37, 144 P.3d 1129 (alterations in original) (quoting *Russell Packard*, 2005 UT 14, ¶ 39 (holding that the undisputed facts there placed it among "the clearest of cases"); *see also Berenda v. Langford*, 914 P.2d 45, 53 (Utah 1996) (stating that the determination of whether a reasonable person would have discovered his or her claim earlier despite the defendant's fraudulent concealment "is necessarily a matter left to trial courts and finders of fact").

¶15 Plaintiffs contend that the Dukes intentionally concealed the subsurface and interior foundation cracks and the water damage in the basement of the house and that Plaintiffs reasonably did not discover those defects until October 2008 when they tore out the drywall in the basement and uncovered the below-ground portions of the exterior foundation. Because they filed their complaint on August 31, 2011, within three years of their discovery of these defects, Plaintiffs argue that the Fraud Claims are not barred by the statute of limitations. In the alternative, Plaintiffs contend that the question of when they should have discovered the Fraud Claims presents a material dispute that precludes summary judgment. *See Nolan*, 2006 UT 53, ¶ 37. In response, Defendants argue that the facts here fall amongst the "clearest of cases" and undisputedly establish that Plaintiffs should have discovered the Fraud Claims more than three years before they filed their complaint. *See id.* Defendants point to the uncontested fact that Plaintiffs had notice before they closed on the house of cracks in the foundation and the fact that

some of those cracks had been patched. Defendants also rely on the uncontested fact that Plaintiffs had noticed that some of the foundation cracks on the exterior wall of the house's foundation had widened between the time Plaintiffs purchased the home and August 2008. Finally, Defendants assert that Plaintiffs could have discovered the cracks in the foundation through reasonable diligence at any time by taking the same investigative steps that Plaintiffs engaged in after the helical pier proved inadequate. Accordingly, Defendants argue that the district court correctly determined that Plaintiffs' fraud claims are barred by the three-year statute of limitations.

¶16    Plaintiffs dispute that their knowledge of narrow, vertical cracks in the foundation of the home before closing equates to knowledge of "water damage, deterioration, and massive deficiencies in the foundation they discovered in October 2008 after they dug underneath the ground outside of the Home and tore drywall out of the inside of the Home's basement." In particular, Plaintiffs claimed before the district court that the large, horizontal cracks present in the exterior of the foundation below the ground level and in the interior of the foundation (the Latent Foundation Cracks) were only revealed to them after they tore out the drywall in the basement. Plaintiffs assert that the Latent Foundation Cracks they found were significantly different than the exterior, hairline cracks of which they were aware when they purchased the house (the Existing Foundation Cracks). Plaintiffs also assert that they had no reason to engage in further investigation of the existing foundation cracks before October 2008 because the home inspection report assured them that "[t]hese vertical cracks in concrete are typically very narrow, hairline to 1/16 of an inch, and usually pose no significant structural problem for a building."

¶17    In response to Defendants' assertion that Plaintiffs failed to present sufficient evidence of a material difference in the foundation cracks, Plaintiffs identify the following evidence which they claim establishes the material differences between the existing foundation cracks known at the time of sale and the latent foundation cracks: (1) the home inspection report, (2) photographs attached to Plaintiffs' opposition to Defendants' summary judgment motion,

and (3) the Dukes' deposition testimony. We analyze each piece of Plaintiffs' asserted evidence in turn and ultimately determine that the district court erred by concluding that a genuine factual dispute did not exist.

### 1. Home Inspection Report

¶18    First, the home inspection report states that the inspector observed "no major visual defects" on the portions of the foundation that were visible during the inspection. While the report does note the existence of "several minor, vertical cracks . . . on the foundation," which "were 1/16-inch or less in width," the report indicates that these cracks "did not appear to have any structural significance at the time of the inspection," and were "not uncommon in poured concrete foundation walls." In addition, the inspection report explains that "[p]arging, the stucco-sand mixture applied to foundation walls, may be added (it exists but is deteriorating in some sections) to help assuage moisture intrusion [into] such cracks." Taking the inferences from this evidence in the light most favorable to Plaintiffs, the home inspection report supports Plaintiffs' assertion that at the time they purchased the house, despite some deteriorating of the parging on those cracks, the existing cracks in the home's exterior foundation were narrow and normal and supports Plaintiffs' argument that a material issue of fact existed. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

### 2. Photos of the Latent Foundation Cracks

¶19    Second, as evidence of a material dispute surrounding what Plaintiffs knew or should have known at the time they purchased the home, Plaintiffs point to photographs of the Latent Foundation Cracks taken by Shiozawa. These photographs were attached to Plaintiffs' opposition to Defendants' summary judgment motion and were accompanied by Shiozawa's declaration stating that she took the photographs. In her deposition, Shiozawa indicated that after the drywall was removed, she observed "a horizontal patch that goes all the way around the foundation." Three of the photographs depict a patched area running horizontally along the interior foundation in the area where Plaintiffs tore out the

basement drywall in October 2008. Other photographs show cracks in the portions of the exterior foundation that Plaintiffs dug out in October 2008, which cracks appear wider on the below-ground portion of the foundation than on the portion above the ground. We agree with Plaintiffs that these photographs provide some evidence that the Latent Foundation Cracks were wider than the Existing Foundation Cracks, and that at least one latent crack ran horizontally, in contrast to the minor and vertical Existing Foundation Cracks.

¶20 Defendants argue that these photographs offered by Plaintiffs do not create an issue of fact, because they were not properly authenticated and are thus inadmissible. The evidence offered in opposition to summary judgment must be evidence that would be admissible at trial. *Winegar v. Springville City*, 2014 UT App 9, ¶ 19, 319 P.3d 1. Accordingly, "inadmissible evidence cannot be considered in ruling on a motion for summary judgment." *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989). Defendants contend that the photographs are inadmissible because Shiozawa failed to identify a precise date on which she took the photographs. Defendants thus argue that Plaintiffs have failed to authenticate the photographs as providing evidence of the condition of the Latent Foundation Cracks at the time of Plaintiffs' purchase of the home. In addition, Defendants argue that to the extent the photographs demonstrate any change in the cracks, the photographs were taken after the installation of the helical pier, which Plaintiffs admit widened the foundation cracks. Although there is no indication that Defendants filed a motion to strike the photographs, Defendants did challenge their authenticity in the district court. The record is silent, however, on whether the district court ruled on this issue or considered the photographs in reaching its decision to grant summary judgment in favor of Defendants.

¶21 To the extent that the district court did consider the photographs, authentication requires that the proponent of an item of evidence "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Utah R. Evid. 901(a). "[I]f a competent witness with personal knowledge of the facts represented by a photograph testifies that the photograph

accurately reflects those facts, it is admissible." *State v. Purcell*, 711 P.2d 243, 245 (Utah 1985) (citing Kenneth S. Broun et al., *McCormick on Evidence* § 214, at 671 (Edward W. Cleary ed., 3d ed. 1984)). Here, Shiozawa filed a declaration indicating that she took the photographs of the Latent Foundation Cracks after the foundation contractor installed the helical pier in October 2008. Defendants do not assert that Shiozawa lacks personal knowledge of the circumstances under which the photographs were taken or that she is otherwise incompetent to testify to that fact. Rather, they contend that she failed to provide an exact date on which she took the photographs and that the photographs do not provide evidence of the condition of the latent foundation cracks on the date of closing. However, the absence of an exact date when the photographs were taken did not require the district court to disregard the photographs. *Id.* ("Any minor discrepancies in the testimony went only to the details of the time and place the pictures were taken."). Furthermore, Defendants' argument that the latent foundation cracks were widened by the installation of the helical pier goes to the weight of the photographic evidence to establish Plaintiffs' substantive claims, not the photographs' admissibility. *See Burtenshaw v. Bountiful Irr. Co.*, 61 P.2d 312, 315–16 (Utah 1936) (holding that the district court did not err in admitting pictures of an irrigation ditch taken after the complaint was filed and after water alleged to have damaged the ditch had run through it, because the weight to be given to photographs was for the jury to decide). Thus, the photographs could have properly been considered by the district court. And because "[r]elevant evidence is presumptively admissible," *State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526, absent a ruling to the contrary, we assume the district court considered the photos as admissible evidence. We therefore agree with Plaintiffs that the photographs provide support for Plaintiffs' opposition to Defendants' summary judgment motion.

### 3. The Dukes' Deposition Testimony

¶22    Finally, Plaintiffs rely on the Dukes' deposition testimony to support their allegation that the Latent Foundation Cracks were materially different than the Existing Foundation Cracks. In particular, Plaintiffs point to Marci's and James's testimonies that

they painted over exterior, above-ground foundation cracks, and Christopher's and James's testimonies that they patched and painted over interior foundation cracks. Contrary to Plaintiffs' assertion, we can find no indication in the referenced testimony that the Dukes "targeted, patched, and concealed large cracks." Christopher and James each testified that they patched the interior foundation in an effort to thoroughly prepare for the installation of drywall in the basement. James further testified that the cracks they patched were minor, and both he and Christopher testified that they had no concern about the foundation based on these cracks. With respect to the exterior foundation, James had no recollection of how they determined to patch and paint only above ground, while Marci testified that they painted and caulked the portion of the exterior foundation wall above the ground because it had been painted previously and the paint was old and flaking. Like James and Christopher, Marci remembered that the cracks they patched were small. And we have located nothing in the deposition testimony relied upon by Plaintiffs that supports the allegation that the patched cracks were large and similar to the Latent Foundation Cracks depicted in the photographs. The deposition testimony does not definitively establish whether the existing and latent foundation cracks were similar or materially different in size.

¶23    Nevertheless, after analyzing all of Plaintiffs' evidence submitted in support of their opposition to Defendants' summary judgment motion, we agree with Plaintiffs that the trier of fact could find that the inspection report did not put Plaintiffs on notice of structural defects in the foundation or a need to investigate further. Further, the trier of fact could also find that Shiozawa's photographs depict some latent foundation cracks wider than 1/16 of an inch and at least one crack in the foundation running horizontally, thereby suggesting that the Latent Foundation Cracks differ from the Existing Foundation Cracks discussed in the inspection report. Thus, the finder of fact could conclude that Plaintiffs first discovered foundation cracks that caused them concern in October 2008, when Plaintiffs tore out the drywall in the basement and uncovered the below-ground portions of the exterior foundation. If the finder of fact does conclude that Plaintiffs discovered the basis of the Fraud Claims in October 2008, then these

claims are not barred by the statute of limitations. Accordingly, we agree with Plaintiffs that there is a disputed issue of material fact as to when the statute of limitations on the Fraud Claims began to run. Therefore, the district court incorrectly granted summary judgment on these claims.

## II. The Contract Claims

¶24    Plaintiffs based the Contract Claims on the warranty obligations contained in the REPC, which state that on the date that Plaintiffs took physical possession of the house, the "plumbing [and other] systems . . . will be in working order and fit for their intended purposes" and the "foundation shall be free of leaks known to Seller." The district court concluded that the "undisputed facts demonstrate that at the time Plaintiffs took possession of the home at issue: (1) the plumbing systems were in working order and fit for their intended purpose; and (2) the seller Defendants were unaware of any leaks in the foundation." Plaintiffs argue that the court "incorrectly interpreted and inappropriately applied the REPC's warranty obligations" by not considering the plumbing system as a whole and by ignoring facts demonstrating that Defendants had knowledge of leaks in the foundation. "Because the interpretation of the terms of a contract is a question of law, [w]e review a district court's interpretation of a contract for correctness, giving no deference to the district court." *Meadow Valley Contractors, Inc. v. Utah Dep't of Transp.*, 2011 UT 35, ¶ 24, 266 P.3d 671 (alteration in original) (citation and internal quotation marks omitted). Additionally, "[w]hen interpreting a contract, we examine the [plain] language of a contract to determine meaning and intent." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

¶25    Plaintiffs contend that they "set forth material facts" demonstrating that the water and sewer lines were either defective or severely compromised at the time the Dukes delivered possession of the home to Plaintiffs. However, Plaintiffs fail to identify precisely what those material facts are. While it is true that Plaintiffs outlined a series of problems relating to the plumbing fixtures, sewer line, exterior hose bib faucet, and water-pressure

gauge in the Statement of Facts section of their opening brief, Plaintiffs provided no specific factual information relating to these problems in the relevant argument section of their brief addressing their Contract Claims. In other words, Plaintiffs did not support their argument with specific facts. Without this information, we are unable to ascertain exactly which facts Plaintiffs consider to be material and whether those facts were properly before the district court when it made its determination on Defendants' summary judgment motion. Furthermore, beyond asserting that the district court adopted an "unjustifiably narrow" view of what constitutes a plumbing system, Plaintiffs have failed to cite any relevant legal authority supporting their argument that the court "incorrectly interpreted and inappropriately applied" the REPC's warranty obligation regarding the plumbing system. *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on."). Thus, because "the overall analysis of [this] issue is so lacking as to shift the burden of research and argument to the reviewing court," we decline to address it further. *See State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). Accordingly, Plaintiffs have not demonstrated that the district court incorrectly granted summary judgment on the plumbing portion of the Contract Claims.

¶26    With respect to whether Defendants were aware of any leaks in the foundation, Plaintiffs assert that they "presented photographs that show the deterioration of wood that was exposed to the cracked foundation and that [Defendants] patched a crack that went right up to that compromised and damaged wood." But these photographs provide little, if any, help in determining *when* the wood deteriorated or *whether* the deterioration was caused by a foundation leak known to Defendants. Plaintiffs reference deposition testimony provided by Christopher in which he allegedly "did not dispute that the wood was, in fact, present at the time that [Defendants] patched the interior cracks in the basement." In reality, Christopher testified only that he did not remember seeing the wood at the time he patched the cracks. And again, even if he had seen the wood, this fact would not necessarily help to establish that he was aware of a leak in the foundation because it

says nothing about the condition of the wood at the time he patched the cracks. To the contrary, the Dukes explicitly indicated in their disclosures that they were unaware of any foundation leaks. *See supra* ¶ 3.

¶27 Plaintiffs also claim that this same area of the foundation "leaked *after* [Plaintiffs] took possession of the home." (Emphasis added.) Even assuming this is true, the warranty only covers leaks known to Defendants on the date Plaintiffs took possession, and any leaks occurring thereafter are not material to Plaintiffs' warranty claims. Plaintiffs have identified no material facts sufficient to create a genuine dispute on this issue. We therefore determine that the district court correctly granted summary judgment on the Contract Claims. *See Orvis v. Johnson*, 2008 UT 2, ¶¶ 18–20, 177 P.3d 600.[6]

III. Attorney Fees Incurred on Appeal

¶28 Lastly, Defendants request an award of attorney fees and costs reasonably incurred on appeal. "A party seeking to recover attorney's fees incurred on appeal shall state the request explicitly and set forth the legal basis for such an award." *See* Utah R. App. P. 24(a)(9). "[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on

---

6. Plaintiffs also challenge the district court's grant of summary judgment on their claim for breach of the implied covenant of good faith and fair dealing. However, "where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom," *see Craner v. Northwestern Mut. Life Ins. Co.*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998); *see also Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (explaining that the implied covenant of good faith and fair dealing "cannot be construed . . . to establish new, independent rights or duties not agreed upon by the parties"). Because we affirm summary judgment on Plaintiffs' claims stemming from the REPC, there can necessarily be no violation of the implied covenant of good faith and fair dealing.

appeal." *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (citation and internal quotation marks omitted). After granting summary judgment in their favor, the district court awarded Defendants attorney fees and costs according to the terms of the REPC.[7] We therefore award Defendants attorney fees on appeal for their successful defense of the district court's grant of summary judgment on the Contract Claims. We remand to the district court for a determination of the reasonable amount of attorney fees and costs incurred by Defendants in addressing the Contract Claims. *See Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 53, 307 P.3d 625.

CONCLUSION

¶29    We affirm the district court's grant of summary judgment in favor of Defendants on the Contract Claims. However, we conclude that, at the very least, an issue of material fact exists as to when the statute of limitations began to run on the Fraud Claims. We therefore reverse the grant of summary judgment on the Fraud Claims as to all Defendants and remand for further proceedings consistent with this opinion. We remand for a determination of the appropriate amount of attorney fees and costs incurred on appeal to be awarded to Defendants and for further proceedings in accordance with this decision.

---

7. In the final sentence of their opening brief, Plaintiffs ask us to vacate the district court's award of attorney fees and costs. Plaintiffs have inadequately briefed this claim, and therefore we decline to address it. *See* Utah R. App. P. 24(a)(9).