**2018 UT App 232**

## THE UTAH COURT OF APPEALS

WELLS FARGO BANK, NA,
Appellee,
*v.*
JUSTINE NOERRING AND DARWIN LONG,
Appellants.

Opinion
No. 20160837-CA
Filed December 20, 2018

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 130405660

Karra J. Porter, Kristen C. Kiburtz, Edward T. Wells,
and David D. Bennett, Attorneys for Appellants

Brett N. Anderson and Scott R. Taylor, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 After Lynnette Noerring and Justine Noerring (collectively, the Noerrings) defaulted on a loan, Wells Fargo Bank, NA (Wells Fargo) prepared to foreclose on the real property that secured that loan.[1] A title search revealed, however, that, due to some missing words, the security interest in the property had not been effectively conveyed. Wells Fargo

---

1. Because Lynnette and Justine share a last name, we refer to each by her first name throughout this opinion. We intend no disrespect by the apparent informality.

filed this action seeking, among other things, reformation of a vesting deed. Following a bench trial, the court amended the deed of trust entered into by the parties to reflect what all parties believed they were doing at the time—creating and conveying an enforceable deed of trust to secure the loan. Appellants challenge that decision. We affirm.

BACKGROUND

¶2    On March 15, 2003, Lynnette created the OMI Trust, designating herself as the trustee and her daughter, Justine, as the sole beneficiary. The only asset placed into the trust was the real property (the Property) at issue in this action.

¶3    Lynnette refinanced the Property several times. In each instance, she transferred the Property by quitclaim deed from herself, as trustee of the OMI Trust, to herself as an individual. After executing a deed of trust on the Property and closing the refinance, Lynnette typically conveyed the Property back to herself, as the trustee of the OMI Trust, by quitclaim deed.

¶4    Lynnette broke from this pattern in one such iteration. In February 2006, Lynnette executed a quitclaim deed (the 2006 Quitclaim Deed), purportedly transferring the Property to Lynnette and Justine as individuals, which was recorded on March 3, 2006.[2] Instead of identifying the grantor as the trustee of the OMI Trust—the record owner of the Property at the time—the 2006 Quitclaim Deed instead listed the grantor as "Lynnette Noerring, a married woman." Following the recording of that quitclaim deed, the Noerrings refinanced the mortgage on the Property with a loan from WMC Mortgage Corp., which loan was secured by a trust deed, also recorded on March 3, 2006.

---

2. By "recording" or "recorded" in this opinion, we refer to recordation of instruments at the Salt Lake County Recorder's Office.

¶5 Five months later, the Noerrings obtained a loan (the New Century Note) from New Century Mortgage Corp. (New Century). This loan satisfied the WMC loan and was, by its terms, to be secured by a trust deed on the Property. In executing the New Century Note, the Noerrings represented that they were title owners of the Property. Along with the note, the Noerrings executed several other documents at the closing, acknowledging that the purpose of the transaction was for a "residential mortgage loan," which entailed providing the lender a security interest in the Property. The New Century Trust Deed was signed by both Lynnette and Justine and recorded on August 29, 2006. The New Century Note was ultimately assigned to Wells Fargo as trustee.[3]

¶6 The Noerrings later applied for and received two modifications to the New Century Note and made payments for approximately five years.[4] On February 25, 2010, Lynnette passed away.[5] A little over a year later, Justine defaulted on the New Century Note. A few months after the default, Wells Fargo conducted a title search on the Property in anticipation of foreclosure. The search revealed that the title owner of the Property was Lynnette Noerring, as trustee for the OMI Trust, and not Lynnette as an individual or Lynnette and Justine as individuals.

---

3. Although not relevant to this appeal, we note for clarity that the New Century Note was sold and pooled together with other mortgage loans into an asset-backed trust. Wells Fargo Bank, NA is the trustee for that trust.

4. Following the second loan modification, Justine made two payments before defaulting, one in March and one in April 2011.

5. Justine succeeded Lynnette as the trustee of the OMI Trust and, in 2013, Darwin Long (Long) succeeded Justine as the trustee.

¶7 Wells Fargo then initiated this action seeking, among other things, reformation of the 2006 Quitclaim Deed. Specifically, Wells Fargo sought "[a] judgment reforming the [2006 Quitclaim Deed] to reflect that *Lynnette Noerring, as trustee of the OMI Trust*, conveyed the Property as the grantor to the Noerrings, so that the Noerrings will be the correct owner and grantor/trustor of the Property under the [New Century Trust Deed]." (Emphasis added.) Wells Fargo also sought an order declaring the New Century Trust Deed to be valid and that it "encumbers and constitutes a first priority lien against the entire Property." Subsequently, Wells Fargo also requested that the New Century Trust Deed be reformed to reflect that Lynnette, as trustee of the OMI Trust, conveyed the security interest in the Property.

¶8 Following a bench trial, the court concluded that Justine and Lynnette, individually, and Lynnette, as trustee for the OMI Trust, intended to grant a security interest in the Property to New Century in order to secure the New Century Note. The trial court found by clear and convincing evidence that the Noerrings and New Century made a mutual mistake regarding the New Century Trust Deed. Specifically, the court determined that the Noerrings and New Century intended to create a valid trust deed and convey a valid security interest in the Property.[6]

---

6. The court alternatively concluded that the 2006 Quitclaim Deed could be reformed based on the same reasoning. Although Wells Fargo initially requested the remedy of reformation of the 2006 Quitclaim Deed, it later asserted that the court could alternatively reform the New Century Trust Deed. Appellants did not challenge the court's adoption of this alternative remedy, but instead focused their arguments below, as on appeal, on the absence of the OMI Trust as a party to the New Century Trust Deed. The trial court could not reform the New Century Trust Deed, Appellants argued, because that reformation would entail drawing the OMI Trust—a separate legal entity that was not a party to the New Century Trust Deed—into that transaction.

(continued…)

Consequently, the trial court ordered reformation of the New Century Trust Deed. The court changed the grantor of the Property from Lynnette and Justine, as individuals, to Lynnette, as trustee of the OMI Trust. Justine and Darwin Long (collectively, Appellants) challenge the trial court's decision.

ISSUES AND STANDARDS OF REVIEW

¶9     Appellants raise three issues on appeal. First, they argue that Wells Fargo's reformation claims are barred by the nonclaim provisions of the Utah Uniform Trust Code and the Utah Probate Code (collectively, the Nonclaim Statutes). *See* Utah Code Ann. § 75-3-803(1) (LexisNexis Supp. 2018); *id.* § 75-7-509(1).[7] Appellants raise this issue for the first time on appeal but assert that the issue can be addressed despite the lack of preservation because application of the Nonclaim Statutes present a jurisdictional bar to Wells Fargo's claims. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. However, "because subject matter jurisdiction goes to the heart of a court's authority to hear a case, it is not subject to waiver and may be raised at any time, even if first raised on appeal." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 (quotation simplified). The applicability and interpretation of a statute is a question of law, which we review for correctness. *Fuller v. Bohne*, 2017 UT App 28, ¶ 9, 392 P.3d 898.

---

(…continued)
Because the trial court ordered reformation of the New Century Trust Deed, we likewise focus our attention on that aspect of the court's decision.

7. Where the applicable provision has not substantively changed, we cite the most recent version of the Utah Code for convenience.

¶10    Second, Appellants argue that Wells Fargo's claims are barred by the three-year statute of limitations applicable to claims for relief on the ground of fraud or mistake. Utah Code Ann. § 78B-2-305(3). Whether a statute of limitations applies and whether the limitations period is subject to tolling are questions of law. *Shiozawa v. Duke*, 2015 UT App 40, ¶ 14, 344 P.3d 1174. However, the determination of when a party reasonably should have known the facts constituting the fraud or mistake claim is a question of fact. *Id.* We will not disturb the fact-finder's determination absent clear error. *Sevy v. Security Title Co. of S. Utah*, 902 P.2d 629, 634 (Utah 1995).

¶11    Third, Appellants contend that the trial court had no authority to reform a deed by substituting a third party as grantor, thereby creating a new deed. "Reformation of a deed is a proceeding in equity." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 35, 96 P.3d 935 (quotation simplified). In equity actions, we review the trial court's factual findings for clear error and its conclusions of law for correctness. *Id.* We will not overturn a trial court's formulation of an equitable remedy "unless it has abused its discretion." *Ockey v. Lehmer*, 2008 UT 37, ¶ 42, 189 P.3d 51 (quotation simplified).

ANALYSIS

I. Nonclaim Statutes

¶12    Appellants assert that the trial court lacked jurisdiction to determine Wells Fargo's reformation claims because those claims were barred by Utah's Nonclaim Statutes. *See* Utah Code Ann. § 75-3-803(1) (LexisNexis Supp. 2018); *id.* § 75-7-509(1). Particularly, Appellants argue that, based on the Nonclaim Statutes, Wells Fargo was required to present its claim for reformation of the deed within one year of Lynnette's death. Because Wells Fargo did not seek reformation within this one-year window, Appellants argue, any claim is barred "against the deceased settlor's estate, the trustee, the trust estate, and the beneficiaries of the deceased settlor's trust." (Quoting

Utah Code Ann. § 75-7-509(1).) Wells Fargo argues in response that the Nonclaim Statutes are not applicable to this action because "any proceeding to enforce any mortgage, pledge, or other lien upon property of the deceased settlor's estate" is exempt from the one-year presentment period. Utah Code Ann. § 75-7-509(4)(a). We first review the Nonclaim Statutes generally, then consider the applicability of the Nonclaim Statutes to Wells Fargo's reformation claims.

¶13    The Nonclaim Statutes generally require creditors to present claims against a decedent's estate or a deceased settlor within one year of the person's death. *See id.* § 75-3-803(1); *id.* § 75-7-509(1). Failure to present a claim timely will likely result in that claim being barred as against the trust or estate because the purpose of the Nonclaim Statutes is "to promote a speedy and efficient system" for settling and distributing the estate or trust of the decedent. *See In re Estate of Ostler*, 2009 UT 82, ¶ 20, 227 P.3d 242 (quoting *In re Estate of Daigle*, 634 P.2d 71, 76 (Colo. 1981) (en banc)). Indeed, the Utah Supreme Court has construed the Nonclaim Statutes "as a jurisdictional bar not subject to tolling." *Id.* ¶ 21. In reaching this conclusion, the supreme court adopted the reasoning employed by the Colorado Supreme Court in *In re Estate of Randall*, 441 P.2d 153 (Colo. 1968) (en banc), and *Daigle. See Ostler*, 2009 UT 82, ¶ 21. The *Daigle* court explained:

> A nonclaim statute operates to deprive a court of jurisdiction. The personal representative of an estate can neither waive it nor toll it. A nonclaim statute imposes a condition precedent to the enforcement of a right of action; that is to say, the claim must be presented within the time set in the notice to creditors or be barred. A statute of limitations, on the other hand, does not bar the right of action but only the remedy. Such a statute may be tolled. Such a statute is a defense which is waived if not affirmatively pleaded.

*Daigle*, 634 P.2d at 75 (quotation simplified). Thus, the Nonclaim Statutes are not statutes of limitation but impose a bar to enforcement of late-filed claims against an estate. *See Ostler*, 2009 UT 82, ¶ 21. Accordingly, if Wells Fargo's reformation claims are made against Lynnette's estate and the Nonclaim Statutes apply, the trial court would have lacked jurisdiction to consider these claims.

¶14    Wells Fargo asserts that its claims are exempt from the one-year presentment period contained in the Nonclaim Statutes because it is a lienholder. Relevant here, the Nonclaim Statutes exempt "any proceeding to enforce any mortgage, pledge, or other lien upon property of the deceased settlor's estate or the trust estate." Utah Code Ann. § 75-7-509(4)(a). Wells Fargo asserts that this provision applies in this case. We disagree.

¶15    Armed with the knowledge that a mistake in the 2006 Quitclaim Deed—and likewise an error in the New Century Trust Deed—prevented foreclosure on the Property, Wells Fargo filed a complaint in the trial court seeking reformation. Wells Fargo requested that the New Century Trust Deed be reformed to reflect a proper conveyance to New Century of a security interest in the Property. Reformation was necessary, in Wells Fargo's view, because—absent altering the language of the New Century Trust Deed—Wells Fargo could not proceed to foreclose on the Property. Because of the mistake in the New Century Trust Deed and lack of a valid security interest in the Property, Wells Fargo sought a judgment for reformation, an equitable remedy preliminary to any enforcement action under the circumstances. Accordingly, Wells Fargo's action below sought to reframe the underlying vesting instrument, not to enforce its terms.

¶16    But this conclusion does not end our inquiry. For Wells Fargo's claims to be jurisdictionally barred, they must constitute "claims" within the meaning of the Nonclaim Statutes. Appellants argue that Wells Fargo's reformation claims are "claims" within the Nonclaim Statutes and are therefore barred

because Wells Fargo did not present these reformation claims to Lynnette Noerring's estate within one year of Lynnette's passing. We also reject this argument and conclude that the Nonclaim Statutes do not apply to the issues presented on appeal.

¶17    As noted, the Nonclaim Statutes require presentation within one year of claims against a decedent's estate that arose before the death of the decedent. In this context, "claims" "include[] liabilities of the decedent . . . , whether arising in contract, in tort, or otherwise, and . . . [do] not include . . . demands or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate." Utah Code Ann. § 75-1-201(6) (LexisNexis Supp. 2018). Put another way, "claims" refer to debts or demands against the decedent that might have been enforced in the decedent's lifetime. As used in this provision, however, "the term[] 'claim' does not include causes of action purely equitable, and in which purely equitable relief is sought." *In re Estate of Sharp*, 537 P.2d 1034, 1037 (Utah 1975); *see also id.* (determining that "equitable claims for relief beyond the money judgment, such as for enforcement of liens or trusts or for enforcement of rights in specific property are not 'claims' within the [nonclaim] statutes" (quotation simplified)). Thus, an equitable cause of action filed against a decedent seeking reformation of an instrument is not seeking re-payment of a "liability of the decedent," which must be presented to the administrator of the estate within the statutory window. *See* Utah Code Ann. § 75-1-201(6). Because Wells Fargo's action below was not composed only of "claims" within the meaning of the Nonclaim Statutes, the trial court did not lack jurisdiction to consider and decide the matters now before us.[8]

---

8. We note that Wells Fargo asserted several claims in its complaint, some of which may have been subject to the

(continued…)

¶18 We have observed that "reformation is an equitable remedy that permits the court to add new terms to a deed or alter the original language of a deed to conform to the parties' intent." *FDIC v. Taylor*, 2011 UT App 416, ¶ 45, 267 P.3d 949 (quotation simplified); *see also Wells Fargo Bank, NA v. Coleman*, 768 S.E.2d 604, 611 (N.C. Ct. App. 2015) ("Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by fraud of the other, the written instrument fails to embody the parties' actual, original agreement." (quotation simplified)). Here, Wells Fargo sought equitable reformation of the 2006 Quitclaim Deed or the New Century Trust Deed. This cause of action falls outside of the definition of a claim under the Nonclaim Statutes. Accordingly, the one-year presentation period does not apply and the trial court had jurisdiction to decide the matter.

## II. Statute of Limitations

¶19 Appellants next argue that the trial court incorrectly identified the date that the statute of limitations for fraud or mistake began to run. An action to reform a deed based upon fraud or mistake must be brought within three years. Utah Code Ann. § 78B-2-305(3) (LexisNexis Supp. 2018).[9]

---

(…continued)
Nonclaim Statutes' one-year presentation period. But the decision of the trial court as well as the parties' argument on appeal focuses on Wells Fargo's cause of action for reformation. We accordingly limit our review to that legal theory.

9. The parties do not dispute either the applicable statute of limitations or whether it is subject to tolling under the statutory discovery rule. We therefore limit our review to the trial court's finding regarding Wells Fargo's discovery of the facts forming

(continued…)

¶20    Generally, the "statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (quotation simplified). A cause of action based upon fraud or mistake, however, "does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78B-2-305(3); *see also Russell Packard*, 2005 UT 14, ¶ 22 (explaining that "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action—the statutory limitations period begins to run"). "[D]etermining when a plaintiff either discovered or reasonably should have discovered his or her cause of action is often a difficult and intensely fact-dependent inquiry." *Russell Packard*, 2005 UT 14, ¶ 22. "Before a statute of limitations may be tolled . . . the plaintiff must make an initial showing that [it] did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Young Res. Ltd. P'ship v. Promontory Landfill LLC*, 2018 UT App 99, ¶ 27, 427 P.3d 457 (quotation simplified).

¶21    Here, the trial court determined that Wells Fargo discovered the mistake—that Lynnette and Justine, in their individual capacities, mistakenly pledged the Property as security for the New Century Loan without being title owners—in September 2011, when Wells Fargo completed a title search in anticipation of foreclosure. Having brought the action within three years of discovery of that information, the court concluded that the statute of limitations did not bar Wells Fargo's claim for reformation. Appellants do not challenge this finding on appeal, but instead assert that, as a matter of law, the statute of limitations began running in 2006 because New Century had actual or constructive knowledge of the New Century Trust

_____

(…continued)

the basis of the mistake claim. *See Shiozawa v. Duke*, 2015 UT App 40, ¶ 14, 344 P.3d 1174.

Deed, which contained the mistaken statements. Because New Century—and by imputation, Wells Fargo—had sufficient notice of the mistake in the title to trigger the statute of limitations in 2006, they assert, the statute of limitations expired before the complaint was filed in 2013. In other words, Appellants ask us to supplant the trial court's factual finding—the 2011 discovery of the mistake—with a legal conclusion (constructive notice) that, by operation of the recording statutes, Wells Fargo reasonably should have known of the mistake in 2006.

¶22    In the context of Utah's recording statutes, we recognize two types of notice, actual and constructive. *See FDIC v. Taylor*, 2011 UT App 416, ¶ 36, 267 P.3d 949. "Actual notice arises from actual knowledge of an unrecorded interest or infirmity in the grantor's title." *Haik v. Sandy City*, 2011 UT 26, ¶ 14, 254 P.3d 171 (quotation simplified). Constructive notice, or notice arising by presumption of law, takes two forms: record notice and inquiry notice. *See id.* "Record notice results from a record or is imputed by the recording statutes." *Id.* (quotation simplified). Unlike record notice, "inquiry notice occurs when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part," though "inquiry notice does not arise from records." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998) (quotation simplified).

¶23    As we noted, Appellants do not challenge the trial court's finding that Wells Fargo had actual notice of the mistake in 2011. Accordingly, we discern no error in the trial court's findings and do not further consider the actual notice argument. With respect to inquiry notice, Appellants fail to explain the particular circumstances here that would put a reasonable person on guard. They instead assert generally that "had the real estate industry been less 'fast and loose' leading up to the Great Recession—[a] 2006 inquiry [into the Property's title] would have revealed the correct state of title." Because the briefing on this theory is inadequate to carry their burden of persuasion, we do not consider it further. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (observing that "an appellant who fails to

adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal" (quotation simplified)).

¶24    With regard to record notice, Appellants argue that Wells Fargo had notice in 2006 of the recorded instruments as a matter of law, which triggered the running of the statute of limitations. To be sure, "from the time of recording with the appropriate county recorder, [recorded deeds] impart notice to all persons of their contents." Utah Code Ann. § 57-3-102(1) (LexisNexis 2010). However, Appellants' argument conflates discovery of the facts constituting a claim for mistake with notice presumed by the recording of instruments. Our supreme court has cautioned, "notice of the deed by reason of its being filed for record is not notice [or discovery] of the facts constituting the fraud" or mistake. *Smith v. Edwards*, 17 P.2d 264, 270 (Utah 1932).

¶25    Here, the trial court engaged in a "difficult and intensely fact-dependent inquiry," considered the instruments recorded, and concluded that the event triggering the statute of limitations occurred in 2011. *See Russell Packard*, 2005 UT 14, ¶ 22. We discern no error in the court's findings. Lynnette recorded the 2006 Quitclaim Deed conveying any interest she, in her individual capacity, had in the Property to herself and Justine as individuals. By recording the 2006 Quitclaim Deed, Lynnette imparted notice to New Century of the contents of that deed.[10]

---

10. To be certain, Lynnette's 2006 Quitclaim Deed did not effectively convey the Property because the OMI Trust was the title owner at the time and Lynnette listed herself, individually, as the grantor. But the deed was not defective simply because it could not convey title to the Property under the circumstances. Quitclaim deeds "do not imply the conveyance of any particular interest in property" but rather convey only the interest the grantor holds at the time, "be that interest what it may." *See Nix v. Tooele County*, 118 P.2d 376, 377 (Utah 1941); *see also Holladay Towne Center, LLC v. Brown Family Holdings, LLC*, 2011 UT 9, ¶ 31, 248 P.3d 452 (explaining that a "quitclaim deed conveys

(continued…)

On its face, the 2006 Quitclaim Deed fails to illuminate the mistake at issue in this case—that the grantor was incorrectly identified for an effective transfer of title to the Property.

¶26 The mistake is also not apparent on the face of the New Century Trust Deed. Lynnette and Justine represented in the deed that they were title owners of the Property with authority to convey it. By endorsing the New Century Trust Deed, they further agreed to convey an interest in the Property to New Century as security for the New Century Note. Although Lynnette and Justine, in their individual capacities, could not do this in reality, this defect is not apparent in the trust deed. Consequently, Wells Fargo's knowledge of the contents of the 2006 Quitclaim Deed and the New Century Trust Deed does not equate to discovery of the facts constituting the mistake. *See Smith*, 17 P.2d at 270. The operation of the recording statute—imputing knowledge of the contents of the recorded deeds to New Century—did not impart notice of the mistakes at issue.

¶27 The trial court found that New Century had no knowledge of the mistake in the New Century Trust Deed when the loan closed in 2006. Rather, the court determined that Wells Fargo discovered the mistake in 2011 when completing a title search. We are not persuaded that, under the circumstances of this case, the recording statute imparting constructive notice supplants the court's fact-finding inquiry. We accordingly decline to disturb the trial court's findings.

### III. Authority to Reform a Deed

¶28 Appellants also argue that the trial court lacked authority to reform the New Century Trust Deed because doing so involved substituting a third party into the deed and creating a

---

(…continued)
whatever interest the grantors possess at the time" (quotation simplified)).

new deed. By changing the identity of the grantor of the security interest in the Property from Lynnette and Justine, as individuals, to Lynnette, as trustee for the OMI Trust, they argue, the court created an "entirely new" document. We disagree.

¶29     "Reformation of a deed is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 36, 96 P.3d 935 (quotation simplified). Mutual mistake provides a basis to reform a written instrument. *See E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 25, 336 P.3d 1077. Thus, "reformation is an equitable remedy that permits the court to add new terms to a deed or alter the original language of a deed to conform to the parties' intent." *FDIC v. Taylor*, 2011 UT App 416, ¶ 45, 267 P.3d 949 (quotation simplified).

¶30     Appellants first contend that the trial court improperly substituted "a stranger [into] the deed." We are not persuaded. At the time Lynnette and Justine entered into the New Century Trust Deed, Lynnette was the sole trustee of the OMI Trust and Justine was the beneficiary. As trustee, Lynnette was authorized—with consent of the beneficiary, Justine—to mortgage or pledge the Property as security on behalf of the trust. Here, the trial court determined that New Century, Lynnette, and Justine intended to use the Property to secure the New Century Note. Indeed, each party stated as much in the resulting trust deed. Appellants do not challenge this finding, nor do they assert that Lynnette, at that time, could not have encumbered the Property on behalf of the OMI Trust. Instead, they argue that the court could not add the OMI Trust entity to the New Century Trust Deed.

¶31     There is no question that Lynnette, in her capacity as trustee of the OMI Trust, did not sign the New Century Trust Deed. This oversight prompted the present reformation litigation. Lynnette and Justine, as individuals, and Lynnette, as trustee of the OMI Trust, all shared the same interests, however,

and benefited from the loan. Though reformation is inappropriate "when it will result in injury of innocent third parties," this is not such a situation. *See* 27 Williston on Contracts § 70:45 (4th ed. 2018). Had Lynnette, as trustee of the OMI Trust, correctly transferred her interest in the Property for the New Century Note, the individuals present would be identical, i.e., Lynnette, Justine, and New Century. Moreover, by Lynnette and Justine's involvement, Lynnette, as trustee of the OMI Trust, had adequate notice of the transaction and opportunity to advance any opposition. *See Farmers Union Oil Co. of Garrison v. Smetana*, 2009 ND 74, ¶ 20, 764 N.W.2d 665 (holding that "because of the equitable nature of the remedy, reformation is unavailable where its application would inflict an injury upon innocent parties as a result of an act of which they had no knowledge and for which they were not responsible" (quotation simplified)). Appellants fail to explain how Lynnette, as trustee of the OMI Trust, is a "stranger" to the trust deed or how the trustee or the trust itself would suffer prejudice from the reformation.

¶32 Appellants also contend that the trial court improperly wielded the reformation tool to craft a completely new document. We disagree. The reformation doctrine is generally used to "add words omitted from a piece of paper," and Appellants correctly observe that this court has expressed some skepticism about employing the remedy "to add the omitted piece of paper (the deed)." *See Taylor*, 2011 UT App 416, ¶ 45 (affirming the trial court's denial of a motion for summary judgment on an alternative theory of reformation); *see also id.* ¶ 46 (observing that "[w]e have found no Utah cases applying the reformation doctrine so expansively").

¶33 There is no dispute in this case that Lynnette, as trustee of the OMI Trust, did not sign either the 2006 Quitclaim Deed or the New Century Trust Deed. Modifying Lynnette's designation as grantor on the New Century Trust Deed, however, did not create a new document. It merely added words to the New Century Trust Deed to "show the true intent of the agreement between the parties." *See Veibell*,

2004 UT 60, ¶ 36. Accordingly, we discern no error or lack of authority on the part of the trial court to reform the New Century Trust Deed. Because the parties intended to convey an enforceable security interest in the Property, and the OMI Trust would suffer no prejudice as a result of the reformation, we conclude the trial court did not err when it reformed the New Century Trust Deed. *See Taylor*, 2011 UT App 416, ¶ 46.

## CONCLUSION

¶34   The trial court did not err when it granted Wells Fargo's request to reform the New Century Trust Deed. This particular cause of action—equitable reformation—is equitable in nature and therefore was not a "claim" within the meaning of the Nonclaim Statutes. Accordingly, the trial court had jurisdiction to decide the issues raised in this appeal. Additionally, we are not persuaded that, under the circumstances of this case, Wells Fargo had constructive notice of the mistakes in the 2006 Quitclaim Deed or New Century Trust Deed prior to 2011. Finally, we conclude that the trial court retained authority to reform the New Century Trust Deed to reflect the intent of the parties. We affirm.

_____